(Decided January 27th, 1866.)

---

THE YORK COUNTY BANK OF PENNSYLVANIA *vs.* MEYER STEIN AND OTHERS.

PRINCIPAL AND AGENT: CONTRACT.—The law is well settled, that the principal is personally responsible in all cases of contracts made by an agent within the scope of his authority; and this is not varied by the fact that the agent contracts in his own name, whether he discloses his agency or not, provided the circumstances of the case do not show that an exclusive credit was given to the agent.

The circumstance, that the name of the principal was not disclosed at the time of the contract, does not determine the election of the plaintiff to look to the agent alone for the fulfillment of the contract. The principal is notwithstanding answerable when discovered.

And such is the law with regard to a plaintiff principal who contracts by an agent. If the agent contracts in his own name without disclosing the principal, either the agent or the principal may sue upon the contract; the defendant in the latter case being entitled to be placed in the same situation at the time of the disclosure of the principal as if the agent had been the contracting party.

In all cases of contracts by agents without disclosing their principals, the Courts in affording remedies will look to the substantial parties in interest, in order to avoid circuity of actions; saving however to the defendant any rights which he may justly acquire as against the plaintiff by the course of dealing anterior to the disclosure, either with the agent of the plaintiff or his own agent.

HARVARD LAW SCHOOL LIBRARY

The principal will not be made personally liable if in the intermediate time he has settled with his agent without any suspicion of his own personal liability, or if he would otherwise, without any default on his own part be prejudiced by being made personally liable.

In such cases it is essential that the plaintiff should in some way have either deceived the principal or induced him to alter his position and account towards his agent before he is deprived of his remedy against the principal.

It is now settled that the simple fact that the principal has paid his agent the funds with which to pay the plaintiff, does not deprive the plaintiff of his right to look to the principal if the agent fail to pay over according to his orders.

——: ——: Province of Court and Jury.—In an action at law where the question of agency is involved, if there is evidence to establish such agency, the jury are the exclusive judges of its weight.

Appeal from the Court of Common Pleas for Baltimore City.

This was an action instituted by the appellant to recover a balance due on a loan of $3,000 made by it to the appellees on the 11th of March, 1861, payable in 90 days.

*Exception.*—At the trial of the cause, the plaintiff, to maintain the issues on its part joined, proved by George Small, a competent witness, that a few days before the transactions out of which this case arose, the president of the plaintiff, who was the father of the witness, and who lived in York, Pennsylvania, being then in the City of Baltimore, called, at the suggestion of the witness, at the office of several brokers, in company with the witness, and among others, at that of J. R. McGinn, and stated that the plaintiff had money to lend on good collateral security, and inquired if said broker knew of any one who wished to borrow, and that said McGinn, in reply to the inquiry made of him, said that one of his customers, then present, would take said loan, and in the presence of said customer named the collaterals which he had to offer, and that the president replied that he was not authorized to

make said loan on said collaterals without the authority of his board, and promised on his return home to telegraph the witness, Small, on the subject; that he did so telegraph said witness, and that said loan was not made; that said McGinn, in a few days after, called on the witness and inquired whether or not the plaintiff still had any of said money to lend, and stated that one of his, the said McGinn's customers, desired to borrow $3,000 thereof, on $5,000 of Virginia bonds as collateral security ; that said witness communicated said proposition to the president of the plaintiff, and in reply received a letter, which he had diligently searched for, but was unable to find, authorizing him to accept said proposition, and enclosing him for that purpose a check for the amount of the loan after deducting the discount; that when witness received the check and the authority of the bank to make the loan, he notified McGinn, and closed the transaction he thinks in McGinn's office ; that the loan was of $3,000, for 90 days on the security of $5,000 Virginia bonds ; that witness handed McGinn the check, and received from him the bonds.

The plaintiff then produced the paper marked A, which is as follows :

" We have this day received of Mr. George Small the sum of three thousand dollars ($3,000) returnable on 11th day of June next.    And we have deposited in their hands, as collateral security for the payment of the same, the following securities, viz : $5,000 Virginia bonds, viz : No. 11,297, $1,000 ; No. 11,296, $1,000 ; No. 11,298, $1,000 , No. 11,303, $1,000 ; No. 11,302, $1,000 ; with the understanding that if the said loan is not promptly paid, according to agreement, they are authorized, without further notice, to sell the said collaterals for the purpose of satisfying the same, any excess or deficiency to be paid or

29      v. 24.

received by us, as the case may be. We also agree that a satisfactory margin shall be kept up.

"J. R. McGINN & Co."

*Baltimore, March* 11, 1861.

The witness then stated that the paper produced was the agreement entered into between him and McGinn ; that the words " we also agree that a satisfactory margin shall be kept up," were not then in said paper, but were, several days after, added thereto at the request of the witness ; that witness went to McGinn and asked him to add those words, saying that witness had made the same agreement in other cases ; that McGinn at once consented, and added them ; that nothing had been said between them about margins when the agreement was originally made and signed ; and that on the 11th of March, 1861, at the time of receiving said check, the said McGinn also delivered to the witness, Small, the Virginia bonds described in the paper marked " A."

And the said witness further testified that after the troubles of the 19th of April, said bonds began to decline, and said witness called on McGinn for a margin, and again, a few days after, for another margin, and in response to said calls received from him $500 on the 22nd of April, and that he never received from him any other sum ; that the $500 received by McGinn was sent by witness to the bank soon after its receipt, (communication with York having been interrupted for some days after the 19th of April,) and that when sent, witness informed the bank that it was the amount of a margin he had called for on the loan in question, and it was credited by the bank ; that as soon as he heard that McGinn had failed, the witness fearing that inasmuch as he had called for two margins and received only one, McGinn might have obtained from his principal more than he had paid over to the witness, went to the office of McGinn to

inquire who the principal was, and learned from McGinn's clerk that the defendants were the principals; that this was after the receipt of the $500 ; that up to that time the witness knew that McGinn was acting as a broker for some one else, but did not know for whom he was so acting ; that witness then went to the counting-room of the defendants, and asked if said bonds were theirs, and if said loan was effected for them ; to both of said inquiries they replied "yes ;" that witness asked how many margins they paid, and they replied, " two ;" that witness informed them that he had received but one ; and that he notified the defendants when the loan became due, and they tendered him $2,000.

The correspondence between the parties preliminary to the sale of the bonds was then read in evidence, and the defendants' counsel admitted that said bonds were sold at the stock board in the customary and most advantageous way, for the amount indicated in the account sales thereof, which account was offered in evidence.

On cross-examination the witness proved that he had known McGinn for some considerable time ; they were neighbors, and had known him three or four years as a stock, note and bill broker, and had never known him in any other capacity ; that he had had a good many transactions with him, and had given him stocks to buy and sell, and had bought paper of him ; but had never had any other transaction with him in which the plaintiff was concerned ; that the witness had, once or twice before, bought paper and lent money on collaterals for the plaintiff; that he had bought the paper from Messrs. William Fisher & Son, brokers ; that witness called on McGinn for the first margin, probably for the second, before the 19th of April —he was not certain about the date; that he called first for $500, and it was paid on the 22nd ; that about the 19th, he called for the second margin but did not receive any-

thing from McGinn on account of the second call; that the witness called on McGinn to go to his, McGinn's principals, and make the demand for the margins; that witness did not then know or inquire who the principals were; that McGinn requested the witness to make the demand in writing, and he complied; that witness's impression was, he told McGinn to go to his, McGinn's, customers or principals, and make the demand; that witness's understanding was, that McGinn was to bring the money to him; that about the 26th of April, he went to McGinn's office to learn why the money had not been put up (this was the day after McGinn's failure); that he then asked for McGinn's principal (this was the first time he made the inquiry, and the first information he had who were his principals); that the net proceeds of the sales of the bonds were credited by the bank, and also the $500 received from McGinn; and that he thinks he mentioned to the president of the bank that he had added the words authorizing him to call for a margin.

On being recalled, the witness said that he gave McGinn no authority to make said loan, nor any other authority in connection therewith, but himself acted as agent of the bank; that the $500 received by McGinn was sent by witness to the bank soon after its receipt, (communication with York having been interrupted for some days after the 19th April,) and that when sent, witness informed the bank that it was the amount of a margin he had called for on the loan in question, and it was credited by the bank; that witness had been in the habit, from time to time, of doing business for the bank in Baltimore; that he recollects buying notes for them, and is under the impression that he made another loan on collaterals for them; that when he wrote to his father about this transaction, he told him a broker had offered to borrow $3,000 on $5,000 Virginia bonds, and asked him if he would make the loan,

and in reply he received the check, and the bank's authority to lend it.

The defendants' counsel then produced, and showed to the witness the following papers:

"*Messrs. J. R. McGinn & Co.:*

"GENTS.—I hereby call a margin of 10 per cent. on the $5,000 North Carolina 6's, on which I loaned you $3,000, March 11th.                                    GEO. SMALL.

" Balto., April 17th, 1861."

"*Messrs. J. R. McGinn & Co.:*

"GENTS.—Please pay twenty per cent. on the $3.000 loan on Virginia 6's ; this is additional to the 10 per cent. already called.            Oblige            GEO. SMALL.

" Baltimore, April 20th, 1861."

And the witness identified the said papers as those he had written and delivered to said McGinn, and said that the words North Carolina bonds, mentioned in one of them, were used by mistake for the Virginia bonds, about which he had been testifying.

The defendants then, to maintain the issues on their part joined, proved by J. R. McGinn, a competent witness, that he was, throughout the year 1861, a broker, engaged, in the name of J. R. McGinn & Co., in negotiating loans for other persons, and as such had a regular place of business ; that he did not remember ever to have had with the witness, Small, as the agent of the plaintiff, any other transaction than that out of which this case had arisen ; that after learning from the president of the bank, in the manner testified to by Small, that the plaintiff had money to lend, a gentleman came into his office and told him that he thought the defendants wanted the money ; that he did not think he was at that time acting as their broker in any other matters ; before going to the defendants, he went to Small to know if the latter had any of the money which

had been referred to in their former interview, as testified to by Small; that the latter promised to write to the president of the plaintiff, and ascertain whether or not it still had any of the money to lend; that in the meantime the witness went to the defendants and told them he thought he would get some money for them, if they wanted it, and would let them know the next day; that after they told witness that they were willing to borrow $3,000 on $5,000 of Virginia bonds as collateral security, the witness went to Small and reported that one of his (witness's) customers would take said loan on said terms; that on the 11th March, 1861, George Small handed to the witness the check for $2,980.83, referred to in Small's testimony, and the witness at the same time handed to Small the Virginia bonds referred to in Small's testimony, which bonds he had received from the defendants for that purpose, and signed and delivered to him the paper marked "A," also referred to by him; that the words "we also agree to keep up a satisfactory margin," were not then on said paper, but were, several days after, added thereto, at the request of Small, without consultation with the defendants. On the 11th of March, 1861, the following counterpart thereof, marked B, was signed and delivered to the defendants;

"We have this day advanced to Messrs. Stein Bros., the sum of three thousand dollars, ($3,000,) returnable 11th day of June next. And they have deposited in our hands, as collateral security for the payment of the same, the following securities, viz: $5,000 Virginia bonds, viz: No. 11,297, $1,000; No. 11,296, $1,000; No. 11,298, $1,000; No. 11,303, $1,000; No. 11,302, $1,000.

> '$496.40, and in cash rec'd April 18th, as additional margin.
> '$500.00,    "    "    "    22nd,    "    "

F. HARDESTY.'

"With the understanding that if the said loan is not promptly paid, according to agreement, we are authorized,

without further notice, to sell the said collaterals for the purpose of satisfying the same ; any excess or deficiency to be paid or received by us, as the case may be.

J. R. McGINN & Co.

"Balto., March 11th, 1861."

That the credits of $496.40 and $500, endorsed on said paper, were put there by witness' clerk, on the day said sums were paid to witness by defendants, as stated ; that at the time of delivering this paper to the defendants, the witness paid them the proceeds of the check he had received from Small, less a quarter per cent. commissions, charged the defendants by the witness, for negotiating the loan for them ; and that neither Small nor the plaintiff paid him any commissions. The witness then proved the genuineness of the following letters, written by him to the defendants :

"*Messrs. Stein Bros.:*

" GENTLEMEN :—We have been called upon to pay up a margin of 10 per cent. on loan of $3,000, made by us for your account on 11th March last, on $5,000 North Carolina 6 per cent. bonds. You will please respond accordingly.

"Yours, respectfully,      J. R. McGINN & Co.

"Baltimore, 17th April, 1861."

BALTIMORE, 20th April, 1861.

"*Messrs. Stein Bros.:*

" GENTLEMEN :—We have been directed to call an additional margin of twenty (20) per cent. on loan of $3,000 Virginia bonds.              Yours, respectfully,

" J. R. McGINN & Co."

The witness further proved, that in response to the first letter, the defendants paid him, on the 18th of April, $496.40 ; that they calculated what sum then paid would be equivalent to $500 at the maturity of the loan, and paid the above mentioned sum as such, preferring to pay it in

that way, and that he never paid that to Small ; and that on the 22nd of April the defendants paid the witness $500 more, which witness on the same day paid to Small.

On cross-examination, the witness testified that the first time he went to Small in reference to the loan in question, he told him that one of his, the witness's, customers would take $3,000 on $5,000 of Virginia bonds as collateral security ; that at the time of paying the money, the proceeds of the check he had received from Small, to the defendants, he told them they were safe, that their bonds were in the custody of the plaintiff, and that the money paid them was the plaintiff's money—at all events, he was perfectly certain he told them so before any demand was made for a margin ; that he thinks he stated to the defendants that he got the money from George Small, who was acting as agent for the plaintiff ; that it is not customary to tell the borrower who the lender is, but in this case, as only six per cent. interest had been charged, he did inform the defendants ; that he did not, however, inform the plaintiff who was the borrower ; that the first margin was paid on the 18th of April ; that the troubles of the 19th and 20th then ensued, which interrupted business and involved the witness in embarrassments, which rendered him unable to pay to Small what he had received.

The said witness also proved that he had received from the defendants the bonds mentioned in the papers marked "A" and "B," for the purpose of borrowing for them $3,000 thereon, as collateral security.

The defendants then proved by the witness, McGinn, and by Pittman, another broker, that they invariably charged the lender commissions for loans, without reference to the person by whom they were employed, and they so understood the universal usage of brokers to be, unless there was some understanding to the contrary.

And the plaintiff proved by Martin Lewis, that he is a

broker, largely engaged in negotiating loans, and familiar with the usage of brokers; that the invariable usage, in the city of Baltimore, is for the broker to charge the party by whom he is employed, whether borrower or lender, with commissions for effecting loans, unless there is a previous understanding to the contrary.

And thereupon the plaintiff offered the following prayer:

The plaintiff, by its counsel, prays the Court to instruct the jury, that if they believe from the evidence in the cause that the President of the plaintiff, in company with the witness, George Small, called at the office of several brokers, and among others, that of J. R. McGinn, and stated that the plaintiff had money to lend on good collateral security, and inquired if said brokers knew of any one who wished to borrow, and that the said McGinn, in reply to the inquiry made of him, said that one of his customers, then present, would take said loan, and in the presence of said customer named the collaterals which he had to offer, and that the president replied that he was not authorized to make said loan on said collaterals without the sanction of his Board, and promised, on his return home, to telegraph the witness, Small, on the subject, and that he did so telegraph said Small, and that said loan was not made, and that said McGinn afterwards called on the said witness, Small, to know whether or not the plaintiff still had any of said money to lend, and stated that one of his, the said McGinn's customers would borrow $3,000 thereof, on $5,000 of Virginia bonds as collateral security, and that said Small communicated said proposition to the president of the plaintiff, and received, in reply, a letter authorizing him to accept said proposition, and enclosing him, for that purpose, the check for $2,980.83, which has been offered in evidence, and that the said Small, on the 11th March, 1861, handed said check to said McGinn, and that the same was paid on presentation, and that said McGinn, in

receiving said check, delivered to said Small the Virginia bonds mentioned in the paper marked "A," which has been offered in evidence, and that said bonds had been entrusted by the defendant to the said McGinn, as a broker, for the purpose of borrowing thereon, as collateral security, the said money for them, and that the said McGinn, at the time of receiving said check, also signed and delivered to said Small the said paper marked "A," and that the words "we also agree that a satisfactory margin shall be kept up," were not then on said paper, but were, several days after, added thereto by said McGinn, at the request of said Small, and on the 11th of March, 1861, the said McGinn paid to defendants the proceeds of said check, less the commissions charged by him to them for negotiating said loan, and at the same time signed and delivered to them the paper offered in evidence by them, marked "B," and that the said McGinn informed the defendants, before they had paid anything on account of said loan, by way of margin or otherwise, and before any demand for a margin was made, that they were safe, because their bonds were in the custody of the plaintiff; that the money paid to them was the plaintiff's money, and that he had procured it from Geo. Small, who was acting as the plaintiff's agent, and that during all of said transactions the said McGinn was a broker in the city of Baltimore, engaged as such in the name of J. R. McGinn & Co., in negotiating loans for other persons, and that the several letters dated respectively the 10th, 11th, 13th and 14th of June, 1861, were on the dates thereof, respectively, received by the parties to whom they were addressed, and that the said Small, on the 14th of June, 1861, placed said bonds in the hands of William Fisher & Son, stock brokers, for sale, and that the same were in good faith, in the customary and most advantageous way, sold at the Stock Board for the amount indicated in the account sales thereof, marked "C," then the plaintiff

is entitled to recover in this action, and the defendants are not entitled to be credited as against the plaintiff with any money paid by them to the said McGinn, and not paid by him to the said Small.

The Court (KING, J.) rejected said prayer, and verbally instructed the jury that the defendants were entitled, as against the plaintiff, to be credited with all the money paid by them to McGinn, whether paid over by him to Small or the plaintiff, or not, if the jury believe the facts stated in the foregoing bill of exceptions. To which said ruling of the Court, rejecting his said prayer, the plaintiff excepted, and the verdict and judgment being for the defendant, appealed.

The cause was argued before BOWIE, C. J., and GOLDS-BOROUGH, COCHRAN and WEISEL, J.

*S. Teackle Wallis* and *John H. Thomas* for the appellant argued.

1st. That Small and McGinn, both being agents, and so known to each other, had no right to make the con-contract in their own names, and the rights of the parties to this cause were precisely the same as if the principals had themselves negotiated the loan without the intervention of agents. *Story on Agents*, sec. 28.

2nd. That the appellant was entitled to sue, either on the implied *assumpsit* arising from the ownership of the money or on the express contract, notwithstanding its having been made in the agent's name. *Higdon vs. Thomas*, 1. *H. & G.*, 153. *New Jersey Steam Nav. Co. vs. Merchants' Bank*, 6 *Howard*, 378. *Ford vs. Williams*, 21 *Howard*, 289.

3rd. Even if credit was given by Small to McGinn, although he knew that McGinn was acting as a broker, he did not know for whom he was so acting, and the

undisclosed principal can, when discovered, be sued. *Henderson vs. Mayhew,* 2 *Gill,* 408.

4th. The appellees were not entitled to credit for any payments made to McGinn after they knew that the appellant was a principal ; the proof is that they were so informed when they received the money, long before they made any payment, and were then told that Small was the appellant's agent. Any payment subsequently made by them to McGinn was at their own risk. 6 *Howard,* 381.

5th. Small was only an agent to consummate the loan on the terms which had been proposed and accepted. That done, he was *functus officio.* He had no right to alter the contract after it was made so as to authorize a a call for margin. He was not entitled to receive the money even when it was due, still less to receive a payment in advance, still less to authorize any one else to do so ; and the appellant was not bound by his call for a margin, except as to the $500, which it received. *Story on Agency,* sec. 109.

6th. If Small's agency was more extensive he had no right to delegate his trust to any one else. The bank would not, therefore, be chargeable with the money paid to McGinn, even if Small authorized him to receive it. But it is clear he gave no such authority. He called on McGinn for margins, which McGinn had contracted to furnish ; McGinn acted throughout as the agent of the appellees, and they have no right to shift upon others the loss resulting from their misplaced confidence.

7th. The contract between Small and McGinn, before it was altered by them without authority from the appellant, gave Small no right to call for margins. The contract between McGinn and the appellees gave Mc-Ginn no right to require any. The appellees recognized no such right. Instead of paying the margin called

for they made a payment in advance on account of the loan. This was the payment which McGinn appropriated, and about which the controversy exists. It is clear that, even if McGinn had been the agent of the appellant, he had no right to receive such a payment, and the appellant is not bound thereby.

8th. The fact of the appellees having paid McGinn for negotiating the loan shows that he was their agent. If not clearly so, there was, at least, evidence from which the jury was entitled to find that he was, and the Court erred in deciding that the appellant was responsible for all the payments made to him without leaving that question to the jury.

9th. Even if McGinn had been originally the agent of the appellant, or of both parties, his agency terminated with the making of the loan, and he was not entitled, as against the appellant, to receive margins or payment in advance. *Story on Agency*, sec. 109.

*Wm. F. Frick* for the appellees contended.

I. That Small was the agent of the plaintiffs, not merely to make the loan, but to do all that he did in the transaction. And that the plaintiffs are not at liberty to repudiate any of his acts. It was on their behalf that he made the contract, in manner and form as he did ; on their behalf that he superadded to the contract, the condition about "margins;" and on their part, and for their benefit, that he called for the margin, received one, and paid it over to the plaintiffs. Whether originally authorized to go to this extent, matters not. Their subsequent conduct ratified his acts. *Story on Agency*, secs. 253, 259. *Also secs.* 244, 249. And their receipts of the margin precludes them from objecting to his proceedings. In ratifying them in part they adopt the whole. *Story on Agency*, sec. 250.

II. The allowance by the bank of the manner and terms in which Small contracted with McGinn, and called for margins through him, and the acceptance by the bank of the margins received under that contract and call, justified the act of Small in making McGinn the sub-agent in the bank; and McGinn became, *quoad* the calls for and receipts of margins from Stein, the agent of the bank. *Story on Agency*, sec. 249.

III. But whether these points be well taken or not it is clear that this is a case where the contract was in writing, and on its face McGinn was the principal. It is true that he was known to be only an agent, but his principal was not disclosed or asked for by the other party. McGinn was therefore personally responsible upon the written contract, and cannot be discharged as such by parol evidence. It is true that the principal when disclosed was also bound; but with this important qualification, that if he in the intermediate time had settled with his agent, he could not be held bound. *Story on Agency*, sec. 449, *and note. And Paley on Agency, (by Lloyd,)* 246–254.

The different cases in which the agent alone, or the principal alone, or both are bound, are well put in this note. The point, however, is settled by the case of *Thompson vs. Davenport*, 9 *Barn. & Cress.*, 78 *et seq.* Lord TENDERDON says, the case of a party dealing with an agent, knowing him to be such, but not inquiring who is the principal, is like that of a party dealing with an agent, and supposing him to be a principal. That is to say, in both cases, the principal when disclosed may be charged, "subject, however, to this qualification, that the state of the account between the principal and agent is not altered to the disadvantage of the principal." Justice BAYLEY puts it in this language: "If the principal has paid the agent, or if the state of the accounts between the agent and principal would make it unjust that the

seller should call on the principal," it is an answer to the action, &c.

WEISEL, J., delivered the opinion of this Court.

The appeal in this case is from a judgment of the Court of Common Pleas for Baltimore City, and the questions raised by the record and briefs are :

First. Whether the action can be maintained between the parties ;

Secondly. If so, whether the defendants were entitled to a certain credit for five hundred dollars claimed by them under their plea of payment, which was resisted by the plaintiff.

The facts set out in the exception, as proved in the cause, and which were to be found by the jury, show that the contract sued on was made by the agents of the respective parties ; the plaintiff being made known to the defendants at the time of the contract, but the defendants not being disclosed until some time afterwards, but before the day of payment arrived ; it being known however to the plaintiff at the time of the contract that McGinn, a broker, was acting as an agent in the premises for one of his customers. As to the liability of the defendants to the plaintiff in such a case this Court entertains no doubt or difficulty. The law is well settled that the principal is personally responsible in all cases of contracts made by an agent, within the scope of his authority, and this is not varied by the fact that the agent contracts in his own name, whether he discloses his agency or not, provided the circumstances of the case do not show that an exclusive credit was given to the agent. The circumstance that the name of the principal was not disclosed at the time of the contract, does not determine the election of the plaintiff to look to the agent alone for the fulfillment of the contract. The principal is,

notwithstanding, answerable when discovered. *Story on Agency*, sec. 446 *and notes. Thomson vs. Davenport*, 9 *Barn. & Cres.*, 73. And such is the law with regard to a plaintiff, principal, who contracts by an agent. If the agent contracts in his own name without disclosing the principal, either the agent or the principal may sue upon the contract ; the defendant in the latter case being entitled to be placed in the same situation, at the time of the disclosure of the principal as if the agent had been the contracting party. *Sims vs. Bond*, 5 *Barn. & Adol.*, 389. *New Jersey Steam Nav. Co., vs. Merchants' Bank of Boston*, 6 *How.* 380, 381. In all cases of contracts by agents, without disclosing their principals, the Courts in affording remedies, will look to the substantial parties in interest, in order to avoid circuity of actions, saving however to the defendant any rights which he may justly acquire as against the plaintiff by the course of dealing anterior to the disclosure, either with the agent of the plaintiff, or his own agent.

The liability of the defendants in this case, under the law as herein stated, was not disputed by their counsel in the argument, but it was insisted, and that is the main point of inquiry, that their responsibility must be taken with this qualification, that if in the meantime, before their names were disclosed, they had settled with their agent they could not be held bound, and that the payment by them of both the margins called for the plaintiff to their agent before their names were made known, enured to their benefit and should be credited on the plaintiff's claim in suit, whether paid over by their agent to the plaintiff or his agent, or not. That the rule of the defendant's liability is subject to a qualification, arising from his transactions in relation to the contract with his agent in the interval, which will discharge it under certain circumstances, is true. This qualification is stated by Judge

STORY (*Agency, Sec.* 449,) thus : "That the principal will not be made personally liable, if, in the intermediate time, he has settled with his agent, without any suspicion of his own personal liability, or if he would otherwise, without any default on his own part, be prejudiced by being made personally liable." Examples are given and the authorities cited both in the text, and in the notes, to illustrate and explain the extent and bearing of this qualification, and the section concludes with the author's view of it, as derived from the later decisions. In all the cases he declares it essential that the plaintiff should in some way have either deceived the principal, or induced him to alter his position and account towards his agent, before he is deprived of his remedy against the principal ; and that it is now settled that the simple fact that the principal has paid his agent the funds with which to pay the plaintiff, does not deprive the plaintiff of his right to look to the principal, if the agent fail to pay over according to his orders. Same sec. and PARKE BARON *in Heald vs. Kenworthy,* 10 *Ex.*, 739, and other cases cited in note 1.

The instruction of the Court below to the jury on the trial of this cause, was, that if they believed the facts stated in the bill of exceptions, then the defendants were entitled, as against the plaintiff, to be credited with all the money paid by them to McGinn, whether paid over by him to Small or the plaintiff, or not. This was given upon one of two grounds, either that McGinn, in the matter of the margins, acted as the agent of the plaintiff, and that his receipt of them was the receipt of the plaintiff ; or, that the payment of the margins to McGinn, as the agent of the defendants, exonerated them under the circumstances from their amount in this action.

If the former, then the Court erred, inasmuch as it took from the jury the question of fact as to McGinn's agency for the plaintiff in the receipt of the margins, and assumed

30     v. 24

that there was not only evidence, but sufficient evidence of it, and upon such assumption absolutely instructed the jury to allow the credits. If there was evidence to establish such an agency, the jury were the exclusive judges of its weight. *Henderson vs. Mayhew*, 2 *Gill*, 409.

If, however, the Court acted upon the other ground, and considered, as a conclusion of law, that the payment of the margins by the defendants to their own agent, before the disclosure of their names to the plaintiff, discharged them from further liability for such amount of them as was not paid over to the plaintiff or its agent, we think that in this view the Court also erred in the instruction given. In looking at the evidence in the exception we discover nothing that would tend to show that the plaintiff or his agent, in calling for the margins through McGinn, either deceived the defendants or induced them to alter their position or account towards their agent, or so acted as manifestly to make it unjust in the plaintiff to recover the amount. The contract was made with McGinn as a broker and agent for a then unknown principal, the defendants, who received by way of loan the plaintiff's money, upon a security that was failing to answer the purpose, and which it was agreed should be strengthened by what are termed margins, or additional collaterals. Under the circumstances, McGinn was the proper party to whom the application for the margins should have been made. They were made to him as the only known channel of communication with the real borrower, or as the party personally bound to furnish the required collaterals, and within three days of each other; and the only response to both was the receipt of five hundred dollars which was applied to the plaintiff's claim; but whether this was the money of the agent, or was paid by the defendants, neither the plaintiff nor its agent, Small, then knew. In this we see nothing that could bring the payment of the margins to

the defendant's agent, within the qualification of the rule of liability as understood and settled by the authorities to which we have adverted. In other words, we do not see in the record any evidence that would exempt the defendants from the payment they claim to have made.

The instruction given to the jury being therefore erroneous upon both grounds, the judgment of the Court below must be reversed.

In passing upon the prayer of the plaintiff and the instruction asked in it, we see nothing objectionable in them as presented. The controversy was narrowed by the pleadings to the one margin that had been received by McGinn and not paid over by him to the plaintiff or its agent. It was not therefore necessary for the Court to instruct the jury that the defendants should be protected in their verdict for the proceeds of the collaterals sold. Looking at the evidence we can discover no proof which would have justified the jury in finding that McGinn acted in the matter of the margins and of their receipt by him from the defendants, as the agent of the plaintiff. In view, therefore, of this state of the case and of what has been said of the law governing it in its other aspects, the instruction asked by the plaintiff was correct, and its prayer, in our opinion, should have been granted.

*Judgment reversed and*

*procedendo awarded.*

(Decided April 11th, 1866.)