# WILLIAM F. BEISWANGER *vs.* THE AMERICAN BONDING AND TRUST CO.

*Malicious Prosecution—Corporation not Liable for Unauthorized Act of its Agent in Procuring an Arrest—Presumption as to Authority of Attorney.*

A corporation is not liable in an action of malicious prosecution for the act of its agent in causing a party to be arrested, unless the agent was expressly authorized to procure the arrest, or his action in so doing was subsequently ratified by the corporation.

When an attorney brings a civil suit or appears for a party the presumption is that he had authority for his action, but when an attorney appears in a criminal proceeding there is no presumption that he appears by the authority of the prosecuting witness.

The defendant in an action for malicious prosecution was a bonding company which was surety on the bond of the plaintiff as trustee in an equity cause. The trustee was guilty of a breach of trust by misappropriating the funds of the estate, but this was done prior to the passage

of the Act of 1900, ch. 22, which provided that such a breach of trust should constitute embezzlement. Plaintiff was arrested for the breach of trust and charged with embezzlement upon a warrant sworn out by the chief clerk of the judicial department of the defendant company, but the charge against him was dismissed by the grand jury. The chief clerk swore out the warrant upon the instructions of the Assistant Secretary of the company and of one of its counsel. This attorney was not an official of the company and was not authorized to give instructions to the clerk. This clerk had no authority from the company to institute either civil or criminal proceedings, but his duties were to issue Court bonds and look after the causes in which they were issued under the supervision of the Assistant Secretary of the company who was his immediate superior. There was no evidence in the case as to the scope of the authority of the Assistant Secretary and nothing to show that he was authorized by the defendant to set the criminal law in motion. *Held*, that the burden was on the plaintiff to prove that the Assistant Secretary was empowered either expressly or impliedly to cause arrests to be made and this burden has not been met; also that there is no evidence that the attorney who advised the clerk to swear out the warrant was authorized so to do and his mere appearance in the criminal proceeding does not create the presumption that he was authorized by the defendant, and that since the plaintiff has failed to show that his arrest was made under the authority of the defendant company he is not entitled to recover in this action.

Appeal from the Superior Court of Baltimore City, (PHELPS J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, SCHMUCKER and JONES, JJ.

*Grafton Lloyd Rogers*, for the appellant.

*W. Irvine Cross* and *Edward Duffy*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This is an action to recover damages for a malicious prosecution. It was instituted in the Superior Court of Baltimore City by the appellant, Beiswanger, against the appellee, The American Bonding and Trust Company. The declaration alleges in substance that on the 20th of January, 1900, the Bonding Company falsely and maliciously and without any reasonable or probable cause procured the plaintiff to be ar-

rested and brought before Eugene E. Grannan, a Justice of the Peace, at the Central Police Station, for a hearing upon the false charge of the embezzlement of the sum of $400 trust funds belonging to the estate of the E. A. Jones Paper Box Manufacturing Company, and that he was held for trial and was presented by the grand jury, but that the grand jury thereafter reconsidered its action and finally dismissed the plaintiff from custody and discharged him from the Baltimore City Jail wherein he had been incarcerated for a number of days. The appellee, the defendant below, pleaded to this declaration that it did not commit the wrongs therein alleged. Issue was joined on this plea and the case proceeded to trial before a jury. Upon the conclusion of the evidence on both sides, the appellant, the plaintiff below, presented three prayers for instructions to the jury and the defendant offered one. Those proffered by the plaintiff were rejected; whilst the one which the defendant asked was granted. By the granted instruction the jury were told that there was no evidence legally sufficient to prove that any of the officers or agents of the defendant corporation were authorized by the company to have the plaintiff arrested, and that there was no evidence legally sufficient to show that the company subsequently adopted and ratified the acts of its officers or agents in connection with that arrest, and that, therefore, the plaintiff was not entitled to recover and the verdict of the jury must be for the defendant. In obedience to that instruction, the jury returned a verdict for the defendant, the appellee here, and upon the verdict a judgment was duly entered. From that judgment the pending appeal was taken.

If the action of the Superior Court in taking the case from the jury for the want of legally sufficient evidence to entitle the plaintiff to recover, was right, there will be no occasion to consider the rejected prayers which the appellant asked the Court to grant but which were refused, as has just been stated. There is but one bill of exception in the record. There are no questions respecting the admissibility of evidence. The inquiry with which we have first to deal is whether there

was legally sufficient evidence to go to the jury and the solution of this inquiry requires that we should state somewhat in detail the evidence which the record contains.

It is not disputed that the appellant was arrested on the 21st of January, 1900, on a warrant, sworn out before Justice Grannan by Millard Leonard, who was the Chief Clerk of the Judicial Department of the Bonding Company, charging the appellant with the embezzlement of $400 of the trust funds of the E. A. Jones Paper Box Company. On the 24th of January, the charge against the appellant was heard by Justice Grannan and according to the testimony of the Justice, the appellant prior to the hearing admitted that he had misappropriated the trust funds, and that the Justice held the case for several days to enable the appellant and his brother to raise the money to make good the deficit. On January 24th, the shortage not having been made good, the appellant was committed to jail in default of $1,000 bail, and on February 6th, the grand jury finally dismissed the charge of embezzlement and he was released from custody. It appears from the docket entries and the papers in the proceeding wherein the appellant had been appointed trustee for the benefit of the creditors of the Jones Paper Box Company that an auditor's account had been finally ratified in April, 1897, and that therein the sum of $5,551.02 had been distributed amongst the creditors of that company. It further appears that in August, 1899, a petition was filed on behalf of some of the creditors of the Paper Box Company, wherein it was alleged that the appellant, since filing his first account, had collected certain other funds of the Paper Box Company, but had failed to state an account thereof; and the petition prayed that he be required to file a statement of the sums collected since the former audit, and that the papers be referred to an auditor so that a distribution of these subsequently collected funds might be made. Thereupon the appellant did file a statement showing that he had collected the sum of $568.15 and the papers were then referred to Mr. Robert F. Brent to report an auditor's account. In December, 1899, another petition was filed

wherein it was alleged that the papers had been in the hands of the auditor for about four months; that the appellant had refused to pay the auditor's fees, and the account had therefore not been filed; and the petition prayed that the appellant be required to pay said fees and file said account.   On the 22nd of January, 1900, an auditor's account distributing the sum of $568.15 was filed and on the 2nd of February following it was finally ratified.   On the 17th of the same month the appellant paid over to the creditors of the Paper Box Company the said sum of $568.15.   According to the testimony of Mr. Brent, the auditor, the appellant admitted that he did not have the trust funds in hand and asked the auditor whether he would not file the account and wait for the fees, whereupon Mr. Brent replied that if the appellant could not raise the money to pay the auditor's fees and the account should be filed, the appellant would "be up against the creditors in ten days," and would have to make their claim good, and if he could not raise the money to pay the fees, the witness did not see how, he, the appellant, could raise the money to pay the creditors, nor how the filing of the account would benefit him, and that the appellant agreed to this.   When the account was ultimately filed the Bonding Company, the appellee, paid the auditor's fees.   Mr. Curries Willis Haines, a member of the bar who represented some of the creditors of the Paper Box Company, testified that he saw the appellant several times about stating his account distributing this balance of $568.15; that at one of these interviews the appellant offered the witness his individual check, post-dated, and requested the witness to take the check in settlement of the claims which he, the witness, represented and further requested the witness to hold the check until its date, at which time he, the appellant, would have the money in bank to meet it, as he intended getting the funds from his brother in New York.   Mr. Haines refused to accept the check, because no account had been stated and he did not know whether the check covered the amount to which he was entitled.   The record does not indicate that the testimony of Justice Grannan,

Mr. Brent, and Mr. Haines was contradicted in any particular by the appellant. Its admissibility has not been challenged by any exception. It stands therefore unimpeached and unexcepted to, and must be given credit. It proves beyond peradventure that the appellant, as trustee, had collected funds belonging to the trust estate of the Paper Box Company; that he had made some disposition of them which he was not authorized to make, and that when he was called on for a settlement he had not in hand the funds which he ought to have had. He had obviously committed a breach of trust. Had this malversation occurred after the first day of June, 1900, when the *Act of 1900, ch. 22*, making such a defalcation embezzlement, took effect, the appellant according to the testimony herein recited would have been clearly guilty of the crime which that statute created and would have been liable upon conviction to be imprisoned in the penitentiary for not less than one nor more than five years. So much for the facts upon which the arrest was founded. Now as to the connection of the Bonding Company with that arrest.

Of course, it must be conceded that at the time the arrest was made the appellant was not guilty of the crime of embezzlement of trust funds, because the Act creating that offence had not then been passed. His arrest upon that charge was, therefore, a mistake, notwithstanding the facts, as we have already narrated them, clearly indicate that he had misappropriated and misapplied the funds with which he had been entrusted as trustee. But is the Bonding Company liable for that mistake? That is the crucial question in the case. Let us look for a moment at the testimony by which it is sought to hold the Company answerable in damages for that arrest.

The only witness upon whose testimony reliance is placed to connect the Bonding Company with the actual arrest of the appellant is Millard Leonard, whose name has already been mentioned in a former part of this judgment. It will be necessary to set forth somewhat in detail the testimony of this witness.

The Bonding Company carries on amongst other things a

general surety business. It has five or six departments; namely, The Executive Department, which consists of the President and Executive Committee, the Bank Department, the Auditing Department, the Loss and Claims Department, the Legal Department, the Mailing Department, and the Judicial Department. The witness Leonard was, as we have stated, Chief Clerk of the Judicial Department. The duties of the Judicial Department are to issue Court bonds and to follow the risks after the bonds have been issued. By following the risks is meant, looking after the bonds and when the cases in which the bonds have been given are settled and concluded, to have the record closed and to cancel the bonds. If a trustee or fiduciary becomes a defaulter, the Judicial Department turns the matter over to the Loss and Claims Department and then the witness Leonard would not handle it. That the Loss and Claims Department consisted of a number of attorneys of the Company who were employed to adjust risks and losses. The witness Leonard testified that he had sworn out the warrant for the arrest of the appellant. He was then asked: Q. You did not swear it out for yourself? A. No, sir. Q. You swore it out on account of the Company? A. I swore it out. Q. As an officer of the Company? A. Under instructions I got from the Company. Q. Under instructions of Mr. Lee? A. Yes, sir. Q. Mr. Lee belonged to the Loss and Claims Department? A. There was not a Loss and Claims Department really in our Company at that time. Mr. Lee was one of the counsel for the Company at that time. Q. It was in the regular course of your business to swear out warrants upon his instructions, was it? A. Yes, sir. Q. And in the business of your corporation you went and swore it out—you went and swore it out for yourself? A. No, sir; I swore it out. Q. For the Company? A. Yes, sir. Q. When did Mr. Lee give you that instruction? A. I cannot tell you that, it was sometime either in the latter part of 1899 or the early part of 1900. I think it was in January, 1900.

The same witness further testified that he was not present

at the hearing; that Mr. Lee accompanied him to the Station House at the time the warrant was sworn out; that he made affidavit at Mr. Lee's direction; that Mr. Lee did not belong to the Judiciary Department; that he was counsel for the company; that Mr. Abrahams was Assistant Secretary for the company; that he (Leonard) was summoned to appear before the grand jury, and Mr. Lee instructed him to appear there. The witness Leonard further testified that his duties ended with the investigation and keeping the company informed of them; that he had nothing to do with the pressing of claims; that he had no authority to bring suit, or to order suit, or to institute proceedings of any kind for the collection of claims; *that he had no authority for the institution of criminal proceedings or to get out a warrant for the company;* that the Assistant Secretary, Mr. Abrahams, was his immediate superior; that if he hadn't authority he would go to Abrahams for anything he did; and he would act in virtue of his authority on anything that was not a part of his duties. That Mr. Lee was counsel for the company, outside of the company—he was not in any of the departments; *he was not an official of the company; that he was not under the control or orders of Mr. Lee; that he would not have accepted and that it would not have been his duty to accept any order from Mr. Lee,* *outside of the officials;* that he would have to get authority for anything he did from Mr. Abrahams. That he reported the result of his investigations to Mr. Abrahams; and there his duty ended; *that the swearing out of a warrant was not any part of his regular duties.* That when he reported to Mr. Abrahams the result of his investigation, Mr. Abrahams investigated further and Mr. Beiswanger was sent for. That after Mr. Abrahams had investigated the matter further, he instructed him to swear out the warrant. That he had got his authority to swear out the warrant from Mr. Abrahams and Mr. Lee; that he would not have taken it from Mr. Lee if Mr. Abrahams hadn't authorized it.

Q. It would not have been part of your duties to take orders from Mr. Lee ? A. No, sir; Mr. Abrahams did that, he was the Assistant Secretary.

That he was instructed to swear out the warrant simply because he had investigated the risk; *that he had no authority to make out affidavits for warrants ;* that he stated both to Mr. Abrahams and Mr. Lee what he had found out.   That Mr. Lee accompanied him to the police station when the warrant was sworn out ; that Mr. Lee advised the swearing out of the warrant and told him to make the specific charge "Embezzlement of Trust Funds."

Here then we have the Clerk of the Judicial Deparment of the Bonding Company swearing out a warrant not because his duties required him to do so, but solely on the advice of counsel and in obedience to the instructions of Mr. Abrahams, his superior officer ; and we have no evidence whatever of the scope of Mr. Abrahams' authority.   It will scarcely be contended that the Bonding Company is responsible for the unauthorized tortious acts of its officers and servants not done in the line of their duty, unless those acts are subsequently sanctioned and ratified.   To bind the Company by the act of Mr. Abrahams, without whose direction, according to the testimony of Leonard a warrant would not have been sworn out at all, the act must be an act within the limits of Abrahams' agency.   It is not a question as to whether the Bonding Company ought to be held answerable for that arrest but whether there is evidence tending to show that it is responsible therefor.   To be answerable for that arrest the Company, through some agent expressly authorized to so act must have procured the arrest ; or if the arrest was caused by some agent not authorized to have it made, the Company must have ratified or sanctioned it afterwards.   That proposition has been repeatedly affirmed by this Court ; but it may not be amiss to allude to some of the cases.   In *Carter* v. *The Howe Sewing Machine Co.,* 51 Md. 290, the liability of a corporation aggregate to be sued for malicious prosecution and for false imprisonment was elaborately argued and fully and carefully considered.   In the course of the judgment delivered in that case it was said : "The question, as for what acts of the agent or servant the corporation is liable is often one of great difficulty,

and which requires great care in observing the proper limitations of the authority under which the agent or servant acts. While, on the other hand, it is right to consider the agents and servants of corporations as clothed with liberal discretion in the exercise of the authority given them, and to hold the corporations liable for all acts done within the limits of that discretion, on the other hand, it is but just and right that corporations and their innocent stockholders should not be made to suffer the consequences of the wrongful acts of such agents and servants being beyond the limits of their authority.  If therefore, property be entrusted to an agent or servant for sale or safe-keeping, there is clearly an implied authority to do all such things as may be proper and necessary for the protection of that property ; or if a servant be assigned to a position requiring the performance of certain duties, he has an implied authority to do all such things as may be required to enable him to perform those duties.  And for all acts done within the scope of the employment and the limits of the implied authority, the master is liable, however erroneous, mistaken or malicious such acts may be ; but for acts done beyond that limit the corporation cannot be made liable, unless express authority be shown, or there be subsequent adoption or ratification of the act complained of."  After reviewing a number of cases the opinion proceeds :  " From these authorities, it is quite clear, that in a case like the present, where the corporation is sought to be held liable for the wrongful and malicious act of its agent or servant in putting the criminal law in operation against a party upon a charge of having fraudulently embezzled the money and goods of the company, in order to sustain the right to recover, it should be made to appear that the agent was expressly authorized to act as he did by the corporation.  The doing of such an act could not, in the nature of things, be in the exercise of the ordinary duties of the agent or servant entrusted with the custody of the company's money or goods; and before the corporation can be made liable for such an act, it must be shown either that there was express precedent authority for doing the act, or that the act

has been ratified and adopted by the corporation." Amongst the decisions cited in *Carter's case* the following may be mention to illustrate the principles which controlled there and which must govern here. "In the case of *Poulton* v. *Lond. & S. W. R. Co.*, L. R. 2 Q. B. 534, where it appeared that a station-master of the defendant arrested a person travelling by the defendant's road in charge of a horse for not paying for the carriage of the animal on demand, and there was no power in the corporation by law to arrest a person for such non-payment, but only to detain the goods, it was held that no authority could be implied to the station-master, and that, in the absence of an express authority, or a subsequent ratification of the act, the corporation could not be held responsible. And in the case of *Allen* v. *Lond. & S. W. R. Co.*, 6 Q. B. 65, where a clerk in the service of the corporation, whose duty it was to issue tickets to passengers and receive the money, and keep it in a till under his charge, arrested and gave into custody the plaintiff, whom he suspected of attempting to rob the till, it was held that the clerk had no implied authority for such an act, after the attempt had ceased, the arrest not being necessary for the protection of the company's property ; and consequently the corporation was not liable. And in the course of his opinion, MR. JUSTICE.BLACKBURN stated the principle, and the distinction upon which the case was decided, thus : "There is a marked distinction between an act done for the purpose of protecting the property by preventing a felony or of recovering it back, and an act done for the purpose of punishing the offender for that which has already been done. There *is no implied authority* in a person having the custody of property to take such steps as he thinks fit to punish a person who he supposes has done something with reference to the property which he has not done. The act of punishing the offender is not anything done *with reference to the property;* it is done merely for the purpose of vindicating justice." The same principle is very clearly enunciated by the Court of Common Pleas, in deciding the case of *Edwards* v. *Lond. N. W. R. Co.*, L. R., 5 C. P. 445.

The principle of the cases just referred to is the same as that upon which the case of *Mali* v. *Lord*, 39 N. Y. 381, was decided.    In that case, the superintendent and a clerk, employed in the defendants' store, called into the store of the defendants, a policeman, and directed him to arrest and examine the person of a lady suspected of stealing goods, which was done without the knowledge or any express authority of the defendants ; and it was held, in a carefully considered opinion by the Court of Appeals of New York, that there was no implied authority in the superintendent or the clerk to do the act complained of, and that the defendants, the employers, were not liable for the wrong."

In view of these principles, which are conclusively settled as the law of this State, it is obvious that unless the testimony of Mr. Leonard brings the Bonding Company into relation with the arrest of the appellant there is no case against it ; because no other evidence than that of this witness was adduced to show that the appellee was, in any way, responsible for the institution of the criminal proceedings against the appellant.    So far as Leonard himself is concerned his testimony does not prove that *he* had an independent or express authority to swear out, in behalf of the appellee, a warrant for the appellant's arrest.    In fact it shows that he had no such authority.    He acted under the orders or instructions of his superior officer.    If Abrahams, who was Leonard's superior, had no authority to cause the arrest or to direct Leonard to make the affidavit upon which the warrant was issued, the Bonding Company would not be answerable, unless the presence of Mr. Lee, at the office of the magistrate when the warrant was procured or his advice to have the appellant arrested, fastened a liability on the company.    There is no pretence that the arrest was subsequently ratified or sanctioned by the company.    So the inquiry comes down to two questions : *First.* Has the appellant offered any legally sufficient evidence tending to show the scope and extent of Abrahams' agency ? *Secondly*, were the acts and suggestions of Mr. Lee, the attorney, sufficient, *in the circumstances of this case*, to make the Bonding Company liable ?

*First:* It was not for the appellee, the defendant below, to show that Abrahams was *not* authorized to direct the arrest ; but it was for the appellant, the plaintiff, to prove that Abrahams *was* so empowered—otherwise the appellant would be entitled to recover, not because he had established what he ought to have proved, but because the appellee had not disproved what the appellant failed, but was bound, to prove.

There is not a shred of evidence tending to show that Abrahams had been "expressly authorized" by the corporation to act as he did.    His duties were not disclosed, and we cannot guess what they were in order to supply the omitted proof and thereby subject innocent stockholders to the consequences of the tort of an agent not shown to have been acting within the limits of his authority.    In the absence of any evidence to prove that Abrahams was *expressly* empowered to put the criminal law in motion against the appellant, the Bonding Company is not responsible, unless we flatly overrule *Carter's case,* and the following decisions which have adopted it.    *Tolchester Beach Imp. Co.* v. *Steinmeir,* 72 Md. 316; *Nat. Bk. of Com.* v. *Baker,* 77 Md. 462; *Cent. Ry. Co.* v. *Brewer,* 78 Md. 401; *Barabasz* v. *Kabat,* 86 Md. 36; *Turnpike Road* v. *Green,* 86 Md. 167; *Grand Fountain Order* v. *Murray,* 88 Md. 426; *Carter* v. *Worcester Co.,* 94 Md. 625.

*Secondly:* Were the acts and suggestions or advice of Mr. Lee, the attorney, sufficient, *in the circumstances of this case,* to make the Bonding Company liable?    The appellant relies mainly for an answer in the affirmative to this inquiry, upon the case of *Gittinger* v. *McRea,* 89 Md. 513.    That case is clearly distinguishable from this.    In brief, *Gittinger's case* may be thus stated: The salesman of a firm of which McRea was a member, caused Gittinger to be arrested upon a charge of obtaining goods from the firm by means of false pretenses. McRea's name was given to the committing magistrate as a witness, and at the hearing McRea was present, and an attorney, who then appeared against Gittinger and examined the witnesses for the prosecution, stated, in the hearing of McRea, that he, the attorney, represented McRea's firm, and this state-

ment was not denied by McRea.    Shortly before the arrest a threatening letter was addressed to Gittinger by the firm.    In an action for malicious prosecution it was held that this evidence was legally sufficient to go to the jury as tending to connect McRea with the arrest and prosecution.    It was insisted in *Gittinger's case* that the mere fact of the appearance of Mr. Bowen, the attorney who represented McRea's firm before the committing magistrate, was sufficient to hold McRea responsible in the suit for malicious prosecution; and the case of *Kelso* v. *Stigar*, 75 Md. 405, was relied on to support that contention; just as *Hench* v. *Todhunter*, 7 H. & J. 275; *Thornburg* v. *Macauley*, 2 Md. Ch. Dec. 425, and *A. M. Bethel Ch.* v. *Carmack*, 2 Md. Ch. Dec. 143, and other similar decisions have been cited by the appellant in the case at bar.    But in *Gittinger's case*, JUDGE BOYD, speaking for this Court, in a carefully prepared opinion, disposed of the contention in these words:    "We do not think that the case of *Kelso* v. *Stigar*, 75 Md. 405, cited by the appellant, which held 'that when an attorney brings a suit or takes upon himself to appear for a party, the Court will not look further, but act upon the presumption that the attorney had authority for his action,' is applicable under the circumstances, as Mr. Bowen was taking part in a prosecution in the name of the State, and it would not necessarily follow that he appeared for the prosecuting witness or any one aiding in the prosecution."    But because of the other and wholly different evidence which showed that Mr. Bowen did in fact appear for McRea and prosecute the criminal proceeding for him, it was held that the malicious prosecution case should have gone to the jury.    In the case at bar the situation is by no means parallel.    The mere appearance of Mr. Lee before the magistrate when the warrant was sworn out by Leonard would not, under *Gittinger's case*, furnish sufficient ground to hold the stockholders of the Bonding Company liable, because such an appearance *in a criminal proceeding* does not *of itself* and *alone* carry with it the presumptions of authorization and agency which attach to an appearance by an attorney in a

*civil action.* Eliminating the fact of Mr. Lee's appearance, for the reason just given, there is nothing left but his advice to Leonard to make the affidavit upon which the warrant was founded. Did he have express authority to give that instruction? It should be borne in mind that before the stockholders can be made to answer in damages for the wrongful or tortious act of the corporation's agent—and the attorney is merely an agent—in putting the criminal law in operation against an individual, it must be made to appear that the agent was *expressly* authorized by the corporation to act as he did. There is not only not a particle of evidence to show that Mr. Lee had been clothed with such power; but, on the contrary, the appellant's own witness, Mr. Leonard, unequivocally testified that he would not have sworn out the warrant on the suggestion of Mr. Lee, "if Mr. Abrahams hadn't authorized it." Here, then, the appellant's witness distinctly proved that Mr. Lee's agency was limited and that it did not include the power to direct Leonard to inaugurate a criminal prosecution. In the face of that evidence adduced by the appellant himself, how can it be said that a jury would be entitled to *infer* that Mr. Lee had *express* authority to order Leonard to do what he did do? And until it does appear that Mr. Lee did have such authority the stockholders of Bonding Company cannot be punished in damages for the wrongful act of Leonard in procuring the warrant. Surely they cannot be thus punished when it distinctly appears on the appellant's own showing that Mr. Lee had no such authority.

We are not to be understood as deciding that the arrest of the appellant was rightful; but merely as holding that he has failed to prove that the wrongful act was done by the *express* authority of the Bonding Company.

Inasmuch as the evidence adduced did not measure up, in legal sufficiency, to the standard required by the Maryland and the English cases to fasten a liability on the corporation, it is not material whether the prayers which the appellant asked the Court to grant, but which were rejected, were technically right or not. As there was no error in withdrawing

the case from the jury the judgment will be affirmed. And it
is so ordered.

> *Judgment affirmed with costs above
> and below.*

(Decided January 12th, 1904.)