ANNA B. ROSCHEN *vs.* JOSEPH PACKARD, DR.
WILLIAM ROSENAU, ALCAEUS HOOPER, WIL-
LIAM C. ELIASON, ALBERT B. CUNNING-
HAM, THOMAS McCOSKER, GEORGE C.
MORRISON AND CHARLES H. EVANS,
WHO WITH THE LATE JAMES H. PHIL-
LIPS, CONSTITUTED THE BOARD OF
SCHOOL COMMISSIONERS OF BALTI-
. MORE CITY.

*School Commissioners of Baltimore City: duties and powers
of—; judicial discretion; discharge of teach-
ers. Mandamus: action for dam-
ages for false representa-
tions in defence.*

The members of the Board of School Commissioners of Balti-
more City are public officials charged with the exercise of
important executive and administrative functions. Some of
their duties involve the exercise of sound discretion and judg-
ment; and some of them, like the trial and removal of teach-
ers, are in their nature judicial; and for acts done in the per-
formance of such duties, they are not personally liable in
damages, unless they acted with malice, fraud or corruption.
p. 49

The applicant in a petition for a mandamus, which was fully
heard and decided against the petitioner, can not maintain
a suit fo rdamages against the defendants in the mandamus
suit, on the ground that they made false allegations in their
defence of such suit.                                      p. 49

Interest *rei publicæ ut sit finis litium.* *Nemo bis vexari pro
una et eadem causa.*                                       p. 51

*Decided June 22nd, 1191.*

Appeal from the Superior Court of Baltimore City (GOR-TER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, URNER and STOCKBRIDGE, JJ.

*Anna B. Roschen,* in *propria persona* (with *Holmes R. Johnson* on the brief), for the appellant.

*Edgar Allan Poe,* for the appellees.

BURKE, J., delivered the opinion of the Court.

In March, 1906, the appellees, together with the late James H. Phillips, constituted the Board of School Commissioners of Baltimore City. This action was brought against them in the Superior Court of Baltimore City, and it is stated in the appellant's brief to be a suit "for damages for unlawfully and corruptly defrauding her of her position of teacher of German in any primary or grammar school in the City of Baltimore, to which she was legally elected by the Board of School Commissioners of Baltimore City, and which she has filled in an intelligent and capable manner for twelve years. Appellees defrauded appellant of her position of teacher without a trial, as prescribed in the Baltimore City Charter, and thereby defrauded her of means of her existence, and also defrauded her of receiving an annuity from the Teachers' Mutual Benefit Association, of which she was a member and in which she had contributed for eleven years; she sues them also for making a large number of false representations in her petition for mandamus in which Mr. Joseph Packard made affidavit in due form of law that they were true before a justice of the peace; also for perjuries committed at the trial of the petition for mandamus, and for influencing the verdict of the jury against her by false representations during the trial of appellant's petition for mandamus for reinstatement".

.The declaration both in form and substance is a most unusual one. It contains fifty-six paragraphs, and in them is set out the facts upon which the plaintiff intended to rely at the trial to support her case. The recital of facts covers eleven pages of the printed record. The Court sustained a demurrer to the declaration, without leave to amend, and entered a judgment on the demurrer in favor of the defendant for costs, and from this judgment the plaintiff has appealed.

It will not be necessary to set out with much particularity the averments of the declaration, as very few of them have any bearing upon the legal questions presented by the record. The first ten paragraphs deal with the plaintiff's qualifications, experience and successful work as teacher. The eleventh, twelfth, thirteenth and fourteenth paragraphs are devoted to a difficulty, or disagreement which she had with Doctor Miller, the group principal of School No. 95, in which she was teacher, and she charges that Doctor Miller acted "spitefully and antagonistically and untruthfully" towards her, and falsified the record of the plaintiff in a most dishonorable manner. In the fifteenth paragraph it is averred that the defendants violated the City Charter by sending Mr. James H. VanSickle to her class-room to find out if she was able to impart knowledge in German to the pupils of her class, as Mr. VanSickle was not qualified by reason of his ignorance of the German language to supervise her work.

It appears by the sixteenth and seventeenth paragraphs that the plaintiff on the 13th of February, 1906, wrote to the School Board complaining of the conduct of Doctor Miller, but that her letter was not answered, and it is charged that thereafter "Mr. VanSickle preferred false charges against the plaintiff, which she can disprove by witnesses."

The eighteenth, nineteenth, twentieth, twenty-first and twenty-second paragraphs aver the alleged motive of Mr. VanSickle in preferring false charges against her; her freedom from apprehension as to the result of the trial; her employment of Mr. George R. Willis to accompany her on

March 28th, 1906, to the School Board meeting, that being
the day fixed by the board for the trial of the charges; the
demand of Mr. Willis for a bill of particulars, which was
refused in a letter from Mr. Joseph Packard to Mr. Willis
in which it was stated that "if after hearing the testimony
she desires further time to prepare her defence, the Board
of School Commissioners will give her reasonable time after
adjournment on March 28, 1906, to enable her to do so."

It appears by the allegations of the twenty-third, twenty-
fourth and twenty-fifth paragraphs that Mr. Willis did not
attend the trial on March 28th, 1906, and the reason he
did not attend was that the plaintiff "would rather let Mr.
Willis accompany her on the date the Board of School Com-
missioners would set for her defence, than on March 28th,
1906," that Mr. Willis gave her certain letters that had
passed between the board and himself; that copies of these
letters were made and the originals returned to Mr. Willis
"as he needed them for the record"; that Mr. Willis told her
to take her two brothers to the meeting "to take notes and
bring those notes to him, and let him know right the next
morning after March 28th, what date the Board of School
Commissioners had set for her defence in order that he
could keep that date free from other engagements"; that
she attended the meeting on March 28th, 1906, and that
"after the conclusion of the false testimony of Mr. VanSickle
and his witnesses, when Mr. Packard asked the plaintiff,
"What have you got to say, Miss Roschen?" The plaintiff
in a distinct voice and loud enough to be heard by anybody
who is not afflicted with deafness, said, "I ask for further
time to prepare my defence." That Mr. Packard heard what
she said, and that he took advantage of the fact that the
plaintiff had left Mr. George R. Willis home, broke the con-
tract upon which she had appeared and said: "Oh, no, you
cannot have that now."

The twenty-seventh, twenty-eighth and thirty-fourth para-
graphs are as follows:

"27. That not one of the defendants had so much honor in him as to keep this contract and hear witnesses on the plaintiff's side testify."

"28. That the Board of School Commissioners acted improperly in luring the plaintiff under this contract and under the promise of giving her time to prepare her defence, to the Administration Building, and caused her to make an arrangement with her lawyer to accompany her on the date which would be set for her defence, instead of going with her on March 28th, 1906, and then going into a secret session and refusing to set a date for her defence."

"34. That the defendants cruelly removed the plaintiff, who was not guilty of any of the charges, without a trial, contrary to the provisions of the Baltimore City Charter, from her position as a teacher in the public schools of Baltimore City, which constitutes her vocation in life and upon which she is dependent for her livelihood."

In the remaining paragraphs it is averred that the plaintiff instituted a suit for mandamus against the appellees in the Court of Common Pleas, presumably to compel them to reinstate her as a teacher, although this is not definitely alleged. The appellees answered this petition, and the case was tried before JUDGE DOBLER and a jury, and resulted in a verdict and judgment for the appellees.

In the answer and testimony of witnesses at that trial the allegations of the plaintiff as to what took place at the hearing on March 28th, 1906, were denied, and an explanation was given as to why the plaintiff was not given further time to prepare her defence, as Mr. Packard in his letter dated March 23rd, 1906, to Mr. Willis, as stated, would be done. This is shown by the forty-third, forty-fourth, forty-fifth and forty-sixth paragraphs of the declaration, which are as follows:

"43. That in their joint and several answer the defendants made further false representations, to wit: That some five or six witnesses, whom the petitioner had requested the School Board to summon, were summoned, and also attended as

well as the witnesses in support of the charges against the petitioner. That all the witnesses, both those in support of the charges and those summoned in request of the petitioner, were examined and testified.

"44. That in their joint and several answer the defendants made further false representations by stating that each and all of the charges were fully and entirely proved by the testimony of all of the witnesses.

"45. That in their joint and several answer the defendants made further false representation, to wit: That at the conclusion of the hearing the petitioner did not, as she alleges, ask for any adjournment for the purpose of enabling her to present her defence, but on the contrary she departed only after she had been fully informed, that said hearing was a final one, after having, with this knowledge, exercised her right to cross-examine and question the witnesses as to their statements, after having heard the testimony of witnesses called by her.

"46. That in their joint and several answer the defendants made further false representations, to wit: 'Answering the thirteenth (13) paragraph of the petition, these defendants say that the testimony at the said hearing was adduced upon definite charges preferred as already set forth herein.' "

The declaration further alleges that at the trial of the mandamus case some of the defendants, and a number of other witnesses committed perjury, some "in a vulgar manner" and others "in a vulgar, frivolous manner," and that the defendants, "by their false representations in their prayers to the Court" influenced JUDGE DOBLER, before whom the case was heard "in such a detestable way as to grant three out of the four prayers which were granted by him on the school board side under false representations." The fifty-fourth, fifty-fifth and fifty-sixth paragraphs are as follows:

"54. That thereby the defendants have robbed the plaintiff a second time in unlawful manner of the position of teacher in the public schools of Baltimore City, which she has filled in such a faithful, intelligent manner, which con-

stitutes her beloved vocation in life and upon which she is
dependent for a livelihood.

"55. That the unlawful actions of the defendants have
interferred with the plaintiff obtaining employment in her
profession or otherwise.

"56. That the unlawful actions of the defendants have also
robbed the plaintiff of being provided with a teacher's pen-
sion in old age, as their unlawful actions have caused that
the plaintiff's name was taken off the list of members of the
Teachers' Mutual Benefit Association, also known as the
Teachers' Pension Fund, which was organized in 1895, of
which the plaintiff is one of the founders, and to which she
has contributed for eleven years by monthly payments."

These facts do not constitute a good cause of action. As
the suit is brought for the purpose of subjecting the appellees
to damages for acts done in their official capacity as members
of the Board of School Commissioners of Baltimore City, it
is essential to have alleged that the acts which constituted the
cause of action were done wilfully, fraudulently and cor-
ruptly. Section 99 *of the Baltimore City Charter (Act
1908, Ch. 123) provides,* that "Any teacher may be removed
by said board on the recommendation of the Superintendent
of Public Instruction after charges preferred and trial had."
Charges were preferred against the plaintiff, and the trial of
these charges was had by the board, after notice to the plain-
tiff, and she was removed as teacher. In the trial of these
charges the board was acting within its jurisdiction, and was
exercising *quasi judicial powers,* and the members of the
board can not be held individually liable, in the absence of
malice, fraud, or corruption on their part, and there are no
sufficient allegations in the declaration that they were so
actuated.

In *Bevard* v. *Hoffman,* 18 Md. 479, the Court said, "that
the nature of our institutions equally demands that public
officers, acting faithfully and honestly in the discharge of
their duty, and within the limits of their constitutional
powers, shall be protected from liability for mistakes, or

errors of judgment from which none are exempt; provided they are unmixed with fraud or corruption. * * * In all governments power and trust must be reposed somewhere. All that can be done is to define its limits, and provide means for its proper exercise. When the action in question is that of a judicial officer, all that the law can procure is a guarantee, that they shall not with impunity do wrong *wilfully, fraudulently or corruptly.*"

To the same effect are the cases of *Friend* v. *Hamill*, 34 Md. 298; *Knell* v. *Briscoe*, 49 Md. 414; *State* v. *Carrick*, 70 Md. 586.

The members of the Board of School Commissioners of Baltimore City are public officials, charged with the exercise of important executive and administrative functions. The discharge of many of these duties involves the exercise of sound discretion and judgment, and some of them, like the trial and removal of teachers, are in their nature judicial, and for acts done in the performance of such duties they are not personally liable in damages, unless the facts bring them within the rule above stated.

The appellees were in no way responsible for the charges preferred by Mr. Van Sickle, nor for the feeling and conduct of Doctor Miller towards the plaintiff, and the mere fact that the board declined, under the circumstances stated in the declaration, to grant a postponement of the hearing does not render the appellees liable to an action for damages. The Court would assume, in the absence of all explanations, that the board was actuated by honest motives in declining to postpone the trial.

The allegations that the appellees made false statements in their answer to the petition for mandamus, and that certain of them committed perjury at the trial of that case do not state a cause of action. The controverted questions of fact which were in issue in the mandamus case, and which were disposed of there can not be again retried. Upon all the questions involved in that case, the judgment therein rendered is conclusive upon the plaintiff, and the findings of

the jury in that case can not be reviewed or inquired into in this suit. There does not appear to be any conflict of authorities on this point.

In *Taylor* v. *Bidwell,* 65 Cal. 489, the Court said: "The averments with respect to the defendants suborning a witness to swear falsely in the criminal prosecution against the plaintiff do not constitute a cause of action for damage. (*Smith* v. *Lewis,* 3 Johns, 157; *Homer* v. *Fish,* 1 Pick. 441; *Smith* v. *Lowery,* 1 John Ch. 320). In *Smith* v. *Lewis,* the Court observes that however just and reasonable it may appear, upon the first view of the proposition, that a man who has by perjury injured another should be answerable, yet, on a nearer inspection, when the mischiefs resulting from upholding that proposition are considered, the conclusion must be that it would be dangerous in the extreme to sustain the action. In the case of *Eyres* v. *Sedgwick,* Cro. Jac. 601, it became a question whether a person who had made a false affidavit in chancery, whereby the plaintiff was imprisoned by the Chancellor, was liable for an action for the injury, it was held by all the judges, except Haughton, that to punish this perjury by an action on the case, under the pretense of a false oath, should not be suffered, and Haughton admitted that if the defendant had come in by process of law as a witness, it had been otherwise, for then he would have been punishable by indictment." In *Dunlap* v. *Glidden,* 31 Me. 435, which was an action on the case, and the declaration alleged that Dunlap was the just and lawful owner of a lot of land; that Glidden had sued out a writ of entry for the land against the plaintiff, and in that action had obtained a verdict and judgment for the land; that the verdict was obtained by the fraud of Glidden, and by false testimony of two of the defendants and other witnesses, under a conspiracy among all of the defendants, by fraud and perjury, to deprive and cheat the plaintiff of said land. The Court held the declaration bad, saying: "If the judgment was obtained, as is contended, by fraud and perjury, the plaintiff has ample remedy at law. The Court, which rendered the judgment

upon proof of these allegations, would be bound to grant a new trial, so that upon a fuller investigation, justice might be done. The witnesses, if guilty, might be indicted for perjury, and so might all those be indicted who had unlawfully conspired together to deprive the plaintiff of his rights." In *Phelps* v. *Stearns*, 4 Gray, 105, it was held that an injury caused by perjury is not a legal ground of action. In that case the defendant had been committed to jail upon an execution in favor of the plaintiff, and the declaration alleged that upon his application to take the Poor Debtor's oath, and knowingly, wilfully and falsely made oath that "he had not any estate, real or personal, to the amount of the execution, except but what was by law exempted from being taken on execution, and, by wilfully and falsely making oath as aforesaid, was discharged from arrest, and the plaintiff thereby deprived of his lawful remedy to collect the debt due him from the defendant."

In *United States* v. *Throckmorton*, 98 U. S. 93, the Court said: "There are no maxims of law more firmly established or of more value in the administration of justice than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy, namely: *"Interest rei publicae, ut sit finis litium,* and *Nemo bis vexari pro una et eadem causa."* If the Court has been mistaken in the law, there is a remedy by writ of error. If the jury had been mistaken in the facts, there is the same remedy by motion for a new trial. If there has been evidence discovered since the trial, a motion for a new trial will give appropriate relief. But all these are parts of the same proceeding, relief is given in the same unit, and the party is not vexed by another suit for the same matter. So in a suit in Chancery, on proper showing, a rehearing is granted. If the injury complained of is an erroneous decision, an appeal to a higher Court gives opportunity to correct the error. If new evidence is discovered after the decree has become final, a bill of review on that ground may be filed within the rules prescribed by law on that subject. Here, again, these pro-

ceedings are all part of the same suit, and the rule framed for the repose of society is not violated:"

This is especially applicable to that part of the declaration wherein the plaintiff seeks to re-try the issue of fact which was involved in the mandamus case. .

*Judgment affirmed, with costs.*