# WILLIAM S. GITTINGER *vs.* GEORGE P. McRAE.

*Malicious Prosecution—Evidence of Defendant's Participation in the Arrest.*

A salesman of a firm, of which defendant was a member, caused the plaintiff to be arrested upon a charge of obtaining goods from the firm by false pretences. Defendant's name was given to the committing magistrate as a witness, and at the hearing before him defendant appeared, and an attorney, who then appeared against

plaintiff, stated that he represented defendant's firm, and this state-
ment was not denied by defendant. Shortly before the arrest a
threatening letter was addressed to the plaintiff by the firm. In an
action for malicious prosecution, *Held*, that the evidence was legally
sufficient to connect defendant with the arrest and prosecution.

Appeal from the Superior Court of Baltimore City
(RITCHIE, J.) .

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*C. Dodd McFarland* (with whom was *Emil Budnitz* on
the brief), for the appellant.

*Jesse N. Bowen* and *Charles F. Stein*, for the appellee,
submitted the cause on their brief.

BOYD, J., delivered the opinion of the Court.

The appellant instituted an action for malicious prosecu-
tion against the appellee and others in the Supreme Court
of Baltimore City, but during the progress of the trial the
other defendants were dismissed, and at the conclusion of
the plaintiff's testimony the Court granted an instruction
that there was no legally sufficient evidence to connect the
appellee with the arrest and prosecution of the plaintiff·
complained of, and that therefore the plaintiff was not en-
titled to recover against the defendant. The only question
brought before us for review is whether or not that prayer
was properly granted.

The charge against the appellant was obtaining, by
means of false pretences, some liquors valued at $200.00,
the property of Broderick, McRae & Co., of which firm
the appellee was a member. The warrant was sworn out
by F. C. Harman, a salesman of the firm, and the names of
Harman and the appellee were given to the Justice of the
Peace as witnesses. The appellant was arrested about nine
o'clock in the morning, and held at the station-house until
three o'clock in the afternoon, at which time there was a·
hearing, which resulted in his being held for the action of

the Grand Jury, which dismissed the case. At the hearing Mr. Harman, the appellee, Mr. Myers, a bookkeeper of the firm, and Mr. Bowen, an attorney at law, were present. The officer who made the arrest testified that after he took the plaintiff to the station-house, " he went around and notified the people of the hearing, to be present at three o'clock." The Justice said, in explaining the practice in such cases, when the prisoner is apprehended " they send notice to the witnesses to be present at a certain time." Whether or not a regular summons was isssued for the appellee as a witness does not clearly appear, as the only evidence on the subject is that stated above. The appellee, his salesman and his bookkeeper testified at the hearing and there could be no question about the fact that the appellee knew that the appellant was charged with obtaining goods from his firm by means of false pretences. If it be conceded that the testimony was not sufficient to show that the appellee did not appear voluntarily, and that the inference is that the officer meant he summoned the witnesses when he said " he notified the people of the hearing," there was at least some evidence of his voluntarily participating in the prosecution. The plaintiff testified that when he went into business he asked the appellee for a line of credit, and he referred him to Mr. Harman; that the appellee told him he could have what he wanted and turned him over to Mr. Harman; that he said nothing to induce him to give him credit; that after he went out of the business he had a conversation with the appellee, which appears in the record, as follows : " Mr. McRae said, ' You treated me very wrong,' and he went on in regard to the whole thing; plaintiff told him it was impossible for him to pay every one when he was closed up, and the place taken from him and he was kicked out; well, Mr. McRae said to him, why didn't you come to me, I probably would have helped you." He also said he met Mr. Harman on the street, and he, Harman, asked him if he had gotten his letter, and he explained to him the circumstances he had related to Mr.

McRae. Harman said he would give him until three o'clock to be at his office, and he told him he would not be there. The next thing that took place was the arrest. The letter spoken of was signed " Boderick, McRae & Co.

Myers."

and reads as follows: " You are requested to call at our place of business at once in reference to matters of which you are cognizant. A prompt compliance will save you much trouble and annoyance." The appellee not only did not repudiate or object to the prosecution commenced by the warrant sworn out by his salesman for obtaining goods under false pretences from his firm, but, as we have seen, the evidence of the witnesses, of which he was one, resulted in holding the appellant for the action of the Grand Jury. It is true that "mere passive knowledge and consent to the acts of another is not sufficient to make a party liable, yet voluntary aid and assistance undoubtedly will." *Stansbury* v. *Fogle,* 37 Md. 383. It must be remembered that Mr. Harman, who swore out the warrant and gave the appellee's name to the Justice as one of the witnesses, was not a stranger to him, but was in his employ and was the person to whom the appellee had originally referred the appellant, and afterwards the appellee and Mr. Harman both called the appellant to account for not paying the bill due the appellee's firm, and the letter of the firm, which was followed by the arrest, stands unexplained.

But in addition to what we have said, Mr. Bowen, the attorney, stated at the hearing that he represented the firm and he examined the witnesses. Mr. Campbell, the attorney who represented the appellant before the. the Justice, testified in this case that "Mr. Bowen stated at the hearing that he represented Broderick and McRae ; there were a dozen present when he made this statement ; Mr. McRae, of the firm of Broderick, McRae and Co., was present; the hearing was long and a little stormy ; Mr. Bowen did nothing further than to ask questions ; he asked questions of Mr. McRae, Mr. Harman, the plaintiff, and he thinks of the

gentleman to prove the account, Mr. Myers." He also said he asked Mr. Bowen before the hearing if he represented Broderick and McRae, and he replied that he did, but he did not say that Mr. McRae was present at that time. We do not think that the case of *Kelso* v. *Stigar*, 75 Md. 405, cited by the appellant, which held "that when an attorney brings a suit or takes upon himself to appear for a party, the Court will not look further but act upon the presumption that the attorney had authority for his action is applicable under the circumstances, as Mr. Bowen was taking part in a prosecution in the name of the State, and it would not necessarily follow that he appeared for the prosecuting witness or any one aiding in the prosecution, nor do we question the contention on the part of the appellee that the proof of agency cannot be established by the mere declaration of the agent. But there was evidence in this case to show that Mr. Bowen's statement was made in the presence of Mr. McRae. A Justice of the Peace is not required to permit an attorney, who does not represent the State, to appear for the State, in a criminal prosecution, and if he does permit one to appear it is not to be presumed that he did so simply because he was an attorney at law, but because he represented some party having an interest in the controversy. If, therefore, an attorney states in the presence of a person who apparently had or might have some interest in the case, that he appeared for him and such was not the the fact, it would clearly be the duty of the person to say so, and if he does not deny it we can see no reason why it is not some evidence of the employment of the attorney, and it at least calls for an explanation of his silence, when he did not deny the attorney's statement.

Even if it be uncertain whether the appellee heard or understood the statement of Mr. Bowen, the evidence on that subject was sufficient to make it a question for the jury to determine. *Jones on Evidence*, section 291 ; *Com.* v. *Sliney*, 126 Mass. 45.

So when we take into consideration all the circumstances

we have referred to, in connection with the fact that there was evidence tending to show that the appellee was represented at the hearing by counsel, who assisted in the prosecution, we are of the opinion that there was legally sufficient evidence to connect the defendant with the prosecution of the appellant, which should have been submitted to the jury.. The law wisely protects from this character of suits those who act *bona fide*, from proper motives, and with probable cause for believing the accused guilty, but criminal prosecutions are too frequently resorted to for the sole purpose of collecting private debts to permit a too free use of such process.   As the case is presented by the record, with no explanation from the defendant, a great wrong was apparently done the plaintiff, and if a defendant cannot, even be called upon to make a defence under such circumstances as we have related, it would be an easy matter for the responsible party to escape punishment by having an employee, who is financially irresponsible, appear as the prosecutor.   Of course the evidence must sufficiently connect the party sued with the prosecution, but as we have already intimated, we think that has been done in this case, and the judgment must therefore be reversed.    . ..   · , .. .

*Judgment reversed and a new trial awarded, costs to be paid by the appellee.*

(Decided June 21st, 1899)..   .      :     .  ..