NICHOLAS ANGELOZZI ET AL. *v.* NICHOLAS COSSENTINO.
[No. 2, April Term, 1931.]

*Decided June 9th, 1931.*

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Rowland K. Adams,* with whom was *O. Bowie Duckett. Jr.,* on the brief, for the appellants.

*R. Lewis Bainder,* for the appellee.

PARKE, J., delivered the opinion of the Court.

Nicholas Cossentino brought an action for false arrest and malicious prosecution against Nicholas Angelozzi and Frank Angelozzi, individually and as partners trading under the name of the Angelozzi Construction Company. The defendants interposed a plea of not guilty, and the case went to trial before a jury, upon whose verdict the judgment was entered from which this appeal is taken. There are three exceptions to the rulings on evidence, but the important exception is to the refusal of the court to grant a prayer taking the case from the jury on the ground of the legal insufficiency of the evidence to establish a cause of action.

The plaintiff's right of recovery depended upon these facts: The firm was engaged in laying a sewer in one of the public highways of the municipality of Baltimore. Several large trench-digging machines were in use, and were operated by an engineer and a second man, whose employment was to keep the machine level. An excavator was wrecked, while in action, on the morning of October 21st, 1929, by an explosion of such violence and destructive effect as clearly to indicate an extraneous and criminal agency. The following day the local policeman was notified by the defendants that their excavator had been damaged by an explosion, but they did not charge any one with responsibility for the occurrence, nor did they have any suspicion of who had caused the injury. The officer reported the matter to his superior lieutenant, Martin H. Nelson, who assumed charge of the investigation, and went to the scene of the explosion and interviewed the defendants. The lieutenant asked if the defendants suspected anything, or if they had any trouble with any-

one, and they both replied in the negative. Then the officer put the further question whether the defendants had any trouble with any of their employees or feared anybody. The answer of Frank Angelozzi was, "Only one boy, that was Saturday, my foreman laid him off." In response to the officer's request for the name, the plaintiff's was given. The officer then left, and on his own motion interviewed one of the plaintiff's co-employees, from whom he learned that, after moving the plaintiff from his shovel, this employee had had trouble with the plaintiff three months before, and that afterwards the gears of the machine had been broken by sabotage, a big bolt having been put in the interior of the machine; and one William Prime, another laborer of the defendants, was told by the plaintiff on Saturday night, October 19th, that the plaintiff was going to blow up the defendants' machines with the exception of the one with which Prime was working. On the strength of this information, but without the knowledge or request of the defendants, and entirely on his own responsibility, the policeman arrested Nicholas Cossentino, and took him to the station house, where he was questioned. As a result, a clue was obtained that enabled the officer to find a witness, who, with the plaintiff and three other men, were in an automobile near the place of the injured machine, and who stated that the plaintiff had left the automobile and was gone for about fifteen minutes, and then came back and said, "I don't like this damn contractor."

The policeman then preferred at the station house a charge against the plaintiff, and Louis Julian and Salvadore Julian, two of his companions in the automobile, with the unlawful and willful destruction of the excavating machine of the defendants. With the preferring of this charge the defendants had nothing to do, nor did they participate in any act relating to the apprehension, detention, and accusation of the plaintiff and his two associates until the defendants, with nine other witnesses, were summoned to appear at the hearing on October 24th of the plaintiff and two of the men with him in the automobile. The defendants were summoned to

appear at this hearing, where they testified on the call of the officer who had conducted the investigation. After hearing the testimony, the magistrate discharged the two Julians, but held the plaintiff for the action of the grand jury. The defendants, with other witnesses, were summoned by the grand jury, which found an indictment against the plaintiff for the unlawful and willful destruction of the property of the defendants. A summons was issued by the State for the defendants, and Nicholas Angelozzi was returned summoned, and Frank Angelozzi *non est,* but the latter was notified by a police officer to attend the trial, and both defendants were present and testified, as did other witnesses, on the call of the State. The plaintiff was found not guilty.

In these outlined proceedings, whose details appear on the record, there is no testimony legally sufficient to support a finding that the defendants either caused or participated in a wrongful arrest of the plaintiff. The proof is clear and decisive that the arrest, detention, and prosecution of the plaintiff were the independent, discretionary, acts of a public officer, in the regular performance of a duty which a precedent investigation had cast upon him by revealing probable cause to believe the plaintiff guilty of the crime charged. No serious contention is made that there can be a recovery under the count for false imprisonment, nor does there appear to be any legally sufficient evidence of an action on the case for malicious prosecution.

It is true that the plaintiff offered testimony which tended to prove that the defendants were witnesses at the hearing and at the trial, and, on both occasions, testified. Their testimony in the trial court did not implicate the plaintiff in the commission of the crime for which he was being tried. It is plain that the testimony of Frank Angelozzi on that occasion, to the effect that the plaintiff had injured one of the machines by putting a foreign substance in its parts, related to an earlier act; and the transcript of the testimony given by the other defendant does not ascribe the crime to the plaintiff. So the record does not show the defendants as testifying to anything which laid the crime to the plain-

tiff, except at the hearing before the police justice. The plaintiff swore "that at the hearing Nicholas Angelozzi and Frank Angelozzi testified against witness and said 'He put dynamite in the machine,' that Frank Angelozzi said witness put dynamite in the machine."

The plaintiff's own testimony discloses that Frank Angelozzi was not present at the place of the explosion, and that any statement of what caused it would necessarily be an expression of opinion, which was founded on the information obtained through the official investigation of the police and the statements of his employees. As has been said, the evidence obtained by the official inquiry, and the circumstances and the inferences warranted by them, afforded probable and reasonable cause to justify a sensible and cautious man in the belief that the explosion was attributable to the wrongful act of the plaintiff. So, the source being one in which a reasonably prudent man would place confidence and reliance, and his information not tending to impute to the witness either belief or knowledge that the prisoner was innocent, the defendant was justified in an expression of the opinion that the accused was guilty of wrecking the machine with dynamite. The witness did not assert that he was speaking from his own observation of plaintiff's conduct, and, if the obvious significance of the witness' statement as an expression of opinion based upon the narrative of others be rejected, and it be regarded as a statement of a fact of which the witness professed personal knowledge, the situation becomes one of a witness who was summoned to testify at a hearing before a police justice, and who there, on the call of the State, falsely testified as having personal knowledge of a criminal act committed by the party who is accused. The witness, however, had not instituted nor instigated the criminal proceedings. He and his partner, the other defendant, had been commanded to appear by service of the process of the State. His testimony was not voluntarily given, and the incriminatory facts were testified to by other witnesses summoned for the State; so he cannot be said, in any actionable sense, to have caused the accused to have been committed for

trial by the police justice, who was in the performance of a judicial, and not a ministerial, function. Since the defendants had been summoned to appear and testify, it was their duty to obey the writ If they had failed to appear or had refused to testify, they would have defied the law and been amenable to its constraint. When they did appear and did testify at the instance of the State, they were in the performance of a legal duty and under the compulsion of lawful process. Their obligation was not only to testify, but testify to the truth as they knew or believed it, and if they should willfully swear falsely to a fact, they would be guilty of perjury, but, without additional evidence tending to prove other wrongful acts of defendants which, when considered together, were the legal causation of the commencement or continuance by the defendants against the plaintiff of the criminal proceedings instituted against the plaintiff, without reasonable and probable cause, the defendants were not liable in an action of malicious prosecution for the perjury. It is a general rule that an involuntary witness testifying for the prosecution cannot be held in an action for malicious prosecution merely for giving of false and perjured testimony against the plaintiff. *Infra.*

If, however, there were other testimony, which, when taken in conjunction with the false and perjured testimony, would show that the defendant either had instigated a criminal action against the plaintiff, or had caused one to be maintained, or had voluntarily aided or assisted in its prosecution, the defendant would be held in an action for malicious prosecution, and his false and perjured material testimony would be evidence to establish both malice and lack of reasonable and probable cause. *Stansbury v. Fogle,* 37 Md. 369, 384, 385; *Gitlinger v. McRae,* 89 Md. 513, 515-517, 43 A. 823. The two cases cited are distinguished from the one at bar, in that there was in each evidence tending to show that the defendant had voluntarily participated in the prosecution. *Beiswanger v. American Bonding & Trust Co.,* 98 Md. 287, 289, 300, 57 A. 202. In the instant case, the defendants neither began, instigated, nor voluntarily aided

or abetted the criminal prosecution. They were summoned to appear at the hearing and before the grand jury. Process was issued for both at the trial in court, and one was there in obedience to the service of the writ, and the other, who was returned *non est,* was present because he was notified to attend by the police. In the language of Judge Stockbridge in *Mertens v. Mueller,* 119 Md. 525, 537, 87 A. 501, 505, under analogous circumstances: "This is not the voluntary aiding and abetting which the law contemplates." *Id.,* 122 Md. 320, 321, 89 A. 613; *McNamara v. Pabst,* 137 Md. 468, 474, 475, 112 A. 812. 18 *R. C. L.* sec. 7, p. 17; 38 *C. J.* 395; *Eager v. Dyott & Harman* (1831), 5 Car. & P. 4, 172 Eng. Rep. 851. See valuable note in 12 *A. L. R.* 1259-1264; and *McClarty v. Bickel,* 155 Ky. 254, 159 S. W. 783; *Orth v. Basker,* 30 Hawaii, 520, 525; Compare *Hunckel v. Voneiff,* 69 Md. 188, 14 A. 500, 17 A. 1056; *Schaub v. O'Ferrall,* 116 Md. 131, 137-139, 81 A. 789; *Roschen v. Packard,* 116 Md. 42, 49, 81 A. 174.

Considering the record in its entirety, there is not to be found any legally sufficient evidence to establish that the defendants maliciously instituted or carried on any of the successive stages in the criminal prosecution of the plaintiff. Everything they did was in subordination to public officials under whose direction or legal compulsion they acted, and the testimony is clear that they were not actuated by spite or ill will against the plaintiff or by indirect or improper motives. When they testified, the defendants believed in the plaintiff's guilt, and the grounds of this belief were what they had learned from their servants in the course of their employment, and the additional circumstances communicated to them by the police officers who had conducted an official investigation. *Thelin v. Dorsey,* 59 Md. 539, 553; *Lasky v. Smith,* 115 Md. 370, 375, 80 A. 1010; *Stansbury v. Luttrell,* 152 Md. 553, 556-558, 565, 137 A. 339. This information furnished probable and reasonable ground of the plaintiff's guilt, and in all of the acts of the defendants no deviation was shown from what a reasonable and prudent man would have done under similar circumstances, except

in the single statement made involuntarily by one of the defendants at the hearing before the police justice, to the effect that the plaintiff had put dynamite in the destroyed excavator. The witness did not profess to speak from personal knowledge, but, even if regarded as a knowingly false affirmation of a fact, the declaration is not so accompanied by facts and circumstances as to make the testimony legally sufficient to establish that the defendants, or either of them, maliciously and without reasonable and probable cause procured the inception or continuance of the criminal prosecution of the plaintiff. *Supra.* In our opinion, the court should have granted an instruction taking the case from the jury, so there will be a reversal without a new trial.

*Judgment reversed, without a new trial.*