SALVATORE FERTITTA *v.* JAMES E. HERNDON
[No. 47, October Term, 1938.]

*Decided January 10th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Arthur R. Padgett,* for the appellant.

*Abram C. Joseph,* with whom was *Daniel C. Joseph,* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

On the fourth day of April, 1934, James E. Herndon brought suit in the Court of Common Pleas of Baltimore City, wherein the declaration charged Salvatore Miciche and Salvatore Fertitta, individually, and as co-partners trading as Miciche Fruit Company, with the malicious prosecution of Herndon before a justice of the peace on a warrant sworn out on or about June 5th, 1931, and subsequently in the Criminal Court of Baltimore City, by which he was acquitted. The civil suit was tried against both defendants in the Court of Common Pleas January 16th, 1935, resulting in an instructed verdict for one of the defendants, Salvatore Miciche, and a verdict against the other, Salvatore Fertitta, who, on motion, was granted a new trial. The case against Fertitta came

to trial again on March 17th, 1937, in the Baltimore City Court, to which it had been removed, again resulting in a verdict against him, and again he was granted a new trial. The case against Fertitta came to trial for the third time, resulting in a judgment for the plaintiff, from which Fertitta appeals.

The criminal charge against the plaintiff was false pretense by having secured merchandise from the defendants (Miciche and Fertitta) by the giving of a bad check in payment therefor. There is no contention that the evidence does not make out a case of malicious prosecution. The question is the legal sufficiency of the evidence against Salvatore Fertitta.

The evidence is that the plaintiff, who had a stall in the Lexington Market, Baltimore, on June 5th, 1931, bought fruit to the amount of $60 from Neill Fertitta and Herman Blumberg, whose place of business was at 25 West Camden Street, for which he gave his check of the same date on Harry O. Wilson, Banker, and on June 6th, 1931, he bought fruit from them to the amount of $13.80, and gave his check post-dated June 11th, 1931. The bills or sales-tickets for the purchases were made on blanks of the Miciche Fruit Company, 224 Light Street, and the checks were made payable to the Miciche Fruit Company. Herndon testified that the understanding with Blumberg was, that while the check for $60 and the bill of goods were dated June 5th, 1931, the check was to be held—no one said how long—but in two days it was presented for deposit and returned by the banker for lack of funds. The day following (Sunday), Blumberg's son went to Herndon's house and advised him that his check had been returned by the bank, and Herndon then promised to pay $40 on account, which he did on June 16th, 1931. On August 10th, 1931, the Camden Street store mailed to Herndon a statement of his account, showing the charges of $60 and $13.80, and a credit of $40, leaving a balance of $33.80, on which was the notation: "Will give to State's Attorney if you do not settle at once this was cash transaction." Then some time in

September Neill Fertitta swore out a warrant before a police magistrate charging Herndon with having obtained certain goods on June 5th, 1931, and on June 11th, 1931, and having given in payment therefor two bad checks. A hearing was had before the magistrate, and Herndon held for the action of the grand jury, by which, on September 28th, 1931, he was presented, and on October 2nd, 1931, indicted, on two counts charging him with having obtained goods on June 5th and June 11th, "by a certain false pretense by him then and there made to Herman Blumberg, who was then and there the agent and servant of Salvatore Miciche and another * * * unlawfully, knowingly, and designedly did obtain from Salvatore Miciche and another, (goods described) with intent then and there to defraud," etc. On the back of the indictment the witnesses named were Neill Fertitta, Leon Blumberg, Herman Blumberg and George Smith. Only Neill Fertitta and Herman Blumberg testified at the trial, at which he was acquitted by the court sitting as a jury.

It appears from the evidence, without contradiction, that Neill Fertitta, who was a brother of Salvatore Fertitta, and a brother-in-law of Salvatore Miciche, had been employed by the Miciche Fruit Company for some years prior to 1930, when Neill Fertitta and Herman Blumberg went into the fruit and produce business at 25 West Camden Street, in a building owned by Salvatore Miciche, which they rented from him at $100 per month. They remained in business about two years, when they quit, as Miciche said, "they could not get along, they flopped." While they were in business on Camden Street, Miciche guaranteed their credit with the Baltimore Fruit Exchange. As Miciche explained it, "I went to the Baltimore Fruit Exchange, and I guaranteed the bills, whatever the boys can't pay I would pay personally, not the Miciche Fruit Company * * * I told them to bring the money down to me, and every week, when they bring the money down, whatever they were short, if they could not make it up, I would see the people would be paid for

it. \* \* \* They paid the rent and whatever they made was for themselves." His explanation of the use by Neill Fertitta and Blumberg of Miciche Fruit Company stationery was: "I let them have it because we did not use that stationery any more, and I had a great big pile at the store—two waste baskets—we did not use it—I don't know how many thousand—it was no good to us, and I let the boys use it—I did not know anything would go wrong."

This is the evidence upon which the plaintiff relied to recover against Salvatore Miciche and Salvatore Fertitta, co-partners trading as the Miciche Fruit Company.

It is conceivable that persons, not knowing of the actual business relationship between Salvatore Miciche and Neill Fertitta and Blumberg, might be misled, in dealing at 25 West Camden Street, into the belief that they were doing business with the Miciche Fruit Company. Miciche assumed some risk in permitting the use of the discarded stationery of the Miciche Fruit Company, as agency frequently depends on circumstances and appearances for its proof. The weight of the evidence, if there is any evidence of agency, is a question for the jury (*Stiles v. Causten,* 2 G. & J. 49, 53; *Henderson v. Mayhew,* 2 G. 393, 409; *Morrison v. Whiteside,* 17 Md. 452, 459, 79 Am. Dec. 661; *York County Bank v. Stein,* 24 Md. 447, 466; *National Mechanics' Bank v. National Bank of Baltimore,* 36 Md. 5, 21; 2 Am. Jur. 351), and "where the relation of the agency is dependent upon the acts of the parties (as here), the law makes no presumption of agency, and then it is always a fact to be proved, with the burden of proof resting upon the person alleging the agency to show not only the fact of its existence, but also its nature and extent." *Blacher v. National Bank of Baltimore,* 151 Md. 514, 518, 135 A. 383, 385; *Purnell v. Union Trust Co.,* 167 Md. 85, 99, 173 A. 1.

The question of agency of the partnership, however, has been eliminated by the directed verdict in favor of Salvatore Miciche, at the first trial of the case, leaving Salvatore Fertitta as sole defendant. See *Mertens v.*

*Mueller*, 119 Md. 525, 536, 87 A. 501, 505, where it was held that malice proved against one member of a firm cannot be imputed to all of its members, "* * * unless all of the partners are concerned."

The prosecution of the action after Miciche was let out must, therefore, have been on the theory that Salvatore Fertitta instigated, aided, or abetted the prosecution of the criminal charge against the plaintiff. The case then narrows to an interview the plaintiff had with Salvatore Fertitta after the warrant had been sworn out by Neill Fertitta, who testified that it was his idea to have Herndon arrested, and that Miciche and Salvatore Fertitta had nothing to do with it, and knew nothing about it. Herndon testified that when the officer came to serve the warrant he said, "There must be some mistake, these people don't mean to do this to me", and the officer allowed him an opportunity to talk to them, and he said, "I seen Mr. Neill Fertitta there, and Mr. Blumberg, and I said, You swore out a warrant for me and I said I did not think you would do it, and they said, We can't do anything, go down to the home office, and I went down and seen the bookkeeper, Mr. Dick (Samuel Vincent)—I don't know his last name. I told them, I paid $40 and they admitted they got the $40, Mr. Blumberg and Mr. Fertitta; I said to Mr. Dick, I said, you swore out a warrant for me for $32.00 (Neill Fertitta did it) and I did not think you would do that, I have paid you all these years, and if I wanted to beat you, I could have beat you out of five or six hundred dollars. I went downstairs, to one of the men downstairs, and he told me Mr. Sam (Salvatore) Fertitta, who I knew was a co-partner with Mr. Miciche, was in the barbershop, and I did not go in the barbershop, I waited on the outside until he was finished, and when he came out I said to Mr. Fertitta, Mr. Fertitta, your firm has sworn out a warrant for me for $32.00, and I did not think you would do that, I always paid you, and I want to see if you could do anything, and he said, I can't do anything about it, and I said you would not have me arrested for $32.00, I paid you $40.00, and he

said, I know it—and he asked me, what did Dick (Vincent) tell you, and he said, I can't do anything, Mr. Miciche is out of town, and he said, I can't do anything, and I said then I said I will have to go back and submit to arrest, and he said the only thing I can tell you is to pay, and I said I can't pay, if I could have paid, I would not let it go this far, I always paid my bills, but I can't pay it now, and he said he would not do anything, and anyhow, I went back to Mr. Blumberg and Mr. Fertitta at the branch store to have the warrant withdrawn, and if they did not, I would have to go back to the officer." He then submitted to arrest, was taken to a police station, where he had a hearing, the only persons present thereat and testifying being Neill Fertitta and Herman Blumberg.

Salvatore Fertitta denied that any such conversation as Herndon related ever took place, but it is in the record and must, under the demurrer prayer, be accepted as true. It is also the plaintiff's sole reliance for recovery.

The law is very well settled that, one who does not swear out the warrant cannot be held liable in an action for malicious prosecution unless he "* * * had instigated a criminal action against the plaintiff, or had caused one to be maintained, or had voluntarily aided or assisted in its prosecution." *Angelozzi v. Cossentino*, 160 Md. 678, 683, 155 A. 178, 180; *Stansbury v. Fogle*, 37 Md. 369, 384, 385; *Gittinger v. McRae*, 89 Md. 513, 515-517, 43 A. 823. In this case the defendant did not originate, and there is no evidence that he advised, aided, or abetted the prosecution of the criminal case. The plaintiff contends that, even if he did not know anything of the prosecution, when he did learn of it, he stood by and let it go on when it was his duty to speak and interfere, and cites *Restatement, Agency*, sec. 246, and *Hammond v. Du Bois*, 131 Md. 116, 154, 101 A. 612, in support of the contention, which is predicated on an agency, with the agent acting within the scope of his employment, and the continuing control of the agent by his principal, a relation which we find did not exist after the court let Miciche out at the first trial of this case. But see *Beiswanger v. American Bonding*

& *Trust Co.*, 98 Md. 287, 57 A. 202. There are circumstances in which one's failure to act may result in liability, as in *Metropolitan Club v. Hopper McGaw & Co.*, 153 Md. 666, 673, 139 A. 554, and *Carmine v. Bowen*, 104 Md. 198, 203, 64 A. 932, but in a case of malicious prosecution it was said by this court in *Stansbury v. Fogle*, 37 Md. 369, 383, "* * * mere passive knowledge and consent to the acts of another, is not sufficient to render a party liable." 38 *C. J.* 395.

The defendant was right when he, according to the plaintiff, said, "I can't do anything about it." The warrant had already been issued, and the prosecution begun, and the case was then beyond the control of the prosecutor, or any one except the prosecuting officers. 16 *C. J.* 435. All he had to do then to protect himself was to avoid any voluntary action at all, and according to this record, what he did was to do nothing.

For the reasons stated, in the opinion of this court the defendant's prayer for a directed verdict should have been granted.

*Judgment reversed, with costs.*