# FRANKLIN E. WOOD v. PALMER FORD, INC.

[No. 733, September Term, 1980.]

*Decided February 6, 1981.*

The cause was argued before THOMPSON and LOWE, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), specially assigned.

*Arthur M. Wagman* for appellant.

*Charles C. Bowie,* with whom were *Brault, Graham, Scott & Brault* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Franklin E. Wood filed a declaration in the Circuit Court for Prince George's County which, as amended, sought money damages from Palmer Ford, Inc. for malicious prosecution (Count I) and for malicious abuse and use of process (Count II). As to each count Palmer pleaded the general issue, limitations, and that Wood caused or contributed to the incident. As to Count I he also pleaded justification. Trial before a jury was set. The case was disposed of prior to trial by the grant of a motion for summary judgment made by Palmer. Judgment was entered in favor of Palmer for costs. A motion to strike the judgment was filed by Wood and denied. Wood appealed from the judgment and from the denial of his motion to strike it. The issue is the propriety of the court's determination, summarily, that a trial was not necessary.

The principles governing the determination of a motion for summary judgment have been set out repeatedly by the Court of Appeals and this Court. The summary judgment procedure is not a substitute for trial, so the Court does not decide disputed facts but ascertains whether any real dispute as to material facts admissible in evidence exists. The burden of demonstrating clearly the absence of any genuine issue of fact is on the one moving for summary judgment, and any doubt as to the existence of such an issue is resolved against the movant. Even where the underlying facts are undisputed, if those facts are susceptible of more

than one permissible inference, the choice between those inferences should not be made as a matter of law, but should be submitted to the trier of fact. The material facts, that is those the resolution of which will somehow affect the outcome of the case, and all reasonable inferences deducible therefrom, must be considered in a light most favorable to the party opposing the motion and against the party making the motion. Facts necessary to the determination of a motion may be placed before the court by pleadings, affidavit, deposition, answers to interrogatories, admission of facts, stipulations, and concessions. If there is no genuine dispute of any material fact or of any reasonable inference deducible therefrom and the moving party is entitled to judgment as a matter of law, judgment should be rendered forthwith. Conversely if there is such a genuine dispute, or judgment is not entitled as a matter of law, summary judgment should not be granted. *Washington Homes v. Inter. Land Dev.,* 281 Md. 712, 716-718, 382 A.2d 555 (1978) and cases therein cited.

The primary source of the facts before the trial court was a deposition by Wood and answers by Palmer to interrogatories. We give a compendium of Wood's testimony. The general background is that he took his car to Palmer for repair and received an estimate of about $400 as the cost. Upon completion of the repairs he was presented with a bill for $952 with the explanation that the difference represented additional work he had requested. Wood had $400 given him by his father, but did not have the remaining $552. The car remained at Palmer's while Wood attempted to raise the additional cash even though he disputed the charge and thought that the bill was "ridiculous." Palmer's firm position was "no money, no car." Wood received a telephone call from Palmer's service manager. Although the caller did not identify himself, Wood recognized the caller's voice. Representing himself as "a friend," the caller observed that the original estimate for the repairs was $400 and that "we did very little over [that]." He said that he was willing to give Wood the car for $400 in cash. He instructed Wood to leave the cash under the trash can in the men's room at

Palmer's at noon tomorrow and "you will receive the keys to your car. You will find them there under the trash can, the keys to your car and the receipts to your car." Wood did not then follow the suggestion and received a second telephone call from the same person the next night. The proposition was repeated with the explanation: "The reason why I need $400 is . . . it will pay for the parts and labor. You did kind of get screwed over on the deal, and I feel sorry for you and want to help you out." Wood told the mechanic, Steve Gore, who had worked on the car, what had occurred. Gore said that it was the service manager who called and advised Wood to "[g]o right ahead and do it." Wood did it. He left the $400 as directed and found his car keys and receipted bills for the full amount charged. He retrieved his car but after driving it around for a few hours "it started to mess up from the work they did on it. . . . [M]y car was in almost worse shape than when I took it in there. It was such a shoddy job." He took it back to Palmer. The service manager came running out and asked him what he was doing there. When Wood told him that he was bringing the car back because they had not fixed it right, the service manager disclaimed responsibility. He said: "I am telling you if you want to go any further you are going to have to go to court. Call your consumer agency. But we are not responsible for that work." After some argument Wood left in his car.

The same day Wood received a call from John Kirby, Treasurer of Palmer, who asked how Wood got the car since they had no record of payment for the repairs. At Kirby's request Wood went to Palmer's office, told Kirby exactly what had occurred and asked to confront the service manager. Kirby informed Wood that the manager had "quit this morning for some reason. He has gone. He doesn't work here any more." After some discussion, Wood agreed to pay Palmer $952.

A few days later "a Detective Marks from the Prince George's County Police" came to Wood's residence where he lived with his mother, and said: "I would like you to come down to the Hyattsville station and talk with me" about the

Palmer incident. Wood telephoned Kirby and asked what was going on. Kirby said:

"Well, Frank, I did not want to bring any charges. I think you are a good guy. You paid us off. You showed good faith. But the president of Palmer Ford, I did not know it, but he has a strict policy of prosecuting all people that deal in fraudulent ways with the company. . . . It is out of my hands. I am sorry."

While Wood's car was in the possession of Palmer, it had been broken into and the transmission linkage and AM/FM cassette was stolen. Wood had reported the matter to the police. Wood told Kirby that everyone knew that an employee of Palmer was a thief. "I understand he was fired. He wasn't prosecuted." Kirby replied: "That is a different story. I cannot comment on that. I am sorry. The president of Palmer Ford has a strict policy of prosecuting anyone that deals with us in fraudulent ways." Wood went with the detective to the police station. He told Marks what had occurred. Marks said: "Okay. You are under arrest. . . . I am going to have to charge you with embezzlement." Wood was charged and released on his personal recognizance. The initial charge against Wood was embezzlement. Subsequently, he was charged with false pretenses, grand larceny and unauthorized use of the car. Ultimately, all criminal proceedings were terminated in his favor.

In our review as an appellate court of the propriety of the trial court's grant of Palmer's motion for summary judgment, we are concerned with whether there was a dispute as to any material fact, and if not, whether Palmer was entitled to judgment as a matter of law. *Washington Homes,* 281 Md. at 717. In satisfying our concern, we need to look to the elements of malicious prosecution growing out of a criminal charge for guidance with respect to what facts are material. The necessary elements of that tort are:

"(a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the

accused, (c) absence of probable cause for the proceeding, and (d) 'malice', or a primary purpose in instituting the proceeding other than that of bringing an offender to justice." *Exxon Corp. v. Kelly,* 281 Md. 689, 693, 381 A.2d 1146 (1978), citing *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 173, 122 A.2d 457 (1956), *quoted in Durante v. Braun,* 263 Md. 685, 688, 284 A.2d 241 (1971).

It is undisputed that all criminal proceedings were ultimately terminated in favor of Wood, thus meeting the second element of his malicious prosecution action. But, we point out again that the burden of demonstrating clearly the absence of any genuine issue of fact is here on Palmer as the moving party. Any doubt as to the existence of such an issue is resolved against the movant. The duly shown facts which would be admissible in evidence and all reasonable inferences deducible therefrom must be considered in a light most favorable to the party opposing the motion and against the party making the motion. Even where underlying facts are undisputed, if those facts are susceptible of more than one permissible inference, the choice between those inferences should not be made as a matter of law, but should be submitted to the trier of fact. Applying these principles, we cannot say, on the record before us, that whether Wood met the other three elements necessary to sustain his case was for the court as a matter of law and not for the trier of fact.

What muddies the waters is the lack of definitive facts regarding the circumstances surrounding the bringing and the termination of the criminal charges against Wood. Detective Marks had died prior to the hearing on the motion for summary judgment and his version of what occurred is unknown. The charging documents were alluded to during the deposition of Wood but were not produced at that time. Wood testified that he had been arrested three times:

"I was charged with three different crimes. At first, I was arrested for embezzlement; went to court. I was found not guilty by the judge. Then I was

rearrested and charged with grand larceny and false pretenses, and I went to court. The judge dropped the charges. Then I was arrested again, this time charged with unauthorized use of a motor vehicle. Went to court and the charges were dropped. And, at that time, they did not re-charge me."

To Wood's knowledge, Kirby, an officer of Palmer, made application for "these various warrants." Wood's counsel attempted to clarify the matter, stating: "There was only one arrest. And the charges were kicked around three different times because they tried to make something that would fit." Wood added: "I was only formally charged once." Later in his testimony on deposition, Wood stated that Marks arrested him and said: "I am going to have to charge you with embezzlement." What type of charging document was utilized to bring the charge was not shown.

Wood was examined by Palmer on what occurred during his various court appearances. Apparently the case was in the District Court. Wood said he did not testify on the embezzlement charge. "The prosecution made their case. [My lawyer] . . . made a motion of dismissal, and it was granted." At the suggestion of Palmer's counsel Wood's counsel elucidated:

"First charge was embezzlement. When we came up, they refused to bring it up for trial because they realized embezzlement was not a proper ground. So they went and kicked it over and changed it to false pretenses. . . . Then they took the false pretenses out, finally, after two dates on that . . . . [When it came up at the second hearing] they re-did the information for two charges of grand larceny and unauthorized use. It came up for a brief hearing and it was put off — put over by the judge, because it just didn't make any sense, and, finally, it came up in February again on those two charges, when it was dismissed because there were no statutory grounds for any charge against Mr. Wood."

It seems that no testimony was ever taken at any of the court appearances, although the State's Attorney made a proffer of the facts at some of them.

Palmer's answer to interrogatories propounded by Wood asserted that no representative of Palmer had made and signed the application for the criminal complaint against Wood. It stated that $952.25 for the repairs was paid on 3 May 1977. Repair bills attached were receipted as paid on 13 April 1977, apparently about the time Wood left the $400 and took the car. (It was later developed that the first charging document against Wood was issued 27 April 1977.)

At the hearing on the motion for summary judgment, the first charging document against Wood was shown to the court. It was not filed as an exhibit, however, and is not included in the record before us. From the judge's comments it seems that it was a statement of charges. Maryland District Rules 710 and 720. Whether it was issued before or after the arrest of Wood is not clear. M. D. Rule 720 a and b. The judge observed that the embezzlement charge in the document had been amended by him "to section 140, which was obtaining property by false pretenses." See M. D. Rule 713. The change in the charge was in the judge's handwriting. He said: "If it was amended by me it was because some State's Attorney was making that motion in open Court and there would be a transcript of that record." If there was such a transcript it was not produced and is not in the record before us.

After extensive argument the court expressed its view: "In this case all you have is the report of what appears to be an alleged crime to the police authorities and the police authorities *apparently* caused the prosecution to be instituted." (emphasis supplied). The report referred to was not before the court, and Wood's counsel brought to the court's attention that he had not seen it — "I don't know what the report says." He argued that the facts showed that Palmer had "instigated the arrest." As far as the court could see there was "no genuine dispute of the facts in the case." Nevertheless, he expressly found "as a matter of fact, that all the Defendant, Palmer Ford, did was report to the police

700

authorities what was an apparent crime and subsequently thereafter showed up in Court for purposes of prosecution." The court summed up the reasons for granting the motion for summary judgment:

> "There is no showing on the record that they instituted the affidavit before the Commissioner of the District Court or that they ever gave any sworn testimony against the plaintiff, and for this reason, and only because of the reporting of an apparent crime the Court feels that there was sufficient showing of probable cause to cause them to do their action and that the Court also finds by their actions alone that there is no malice shown on the part of the Defendant, Palmer Ford, and for that reason I am going to grant the motion for summary judgment to both counts because the Court feels that they are both styled on both counts and they, both counts have to rise and fall by both situations."

As we construe this reasoning, the court found as a matter of law that Palmer had not instituted or continued the criminal proceedings against Wood because it was the police and not Palmer who swore to the charges. This view followed the argument advanced by Palmer and was contrary to the urging of Wood who claimed that the facts indicated that Palmer had "instigated" the proceedings whether or not it had sworn out the charges.

> "The defendant may be liable either for initiating or for continuing a criminal prosecution without probable cause. But he cannot be held responsible unless he takes some active part in instigating or encouraging the prosecution. He is not liable merely because of his approval or silent acquiescence in the acts of another, nor for appearing as a witness against the accused, even though his testimony is perjured, since the necessities of a free trial demand that witnesses are not to be deterred by fear of tort suits, and shall be immune from liability. On the other hand, if he

advises or assists another person to begin the proceedings, ratifies it when it is begun in his behalf, or takes any active part in directing or aiding the conduct of the case, he will be responsible. The question of information laid before prosecuting authorities has arisen in many cases. If the defendant merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceeding; but if it is found that his persuasion was the determining factor in inducing the officer's decision, or that he gave information which he knew to be false and so unduly influenced the authorities, he may be held liable." Prosser, *Law of Torts* pp. 836-837 (4th ed. 1971) (footnotes omitted).

This reflects the law of Maryland. A person may be the moving cause of a criminal proceeding even though he does not swear out any criminal charge. "One who instigates or aids and assists in a criminal prosecution may be liable regardless of whether he swears out a warrant." *Safeway Stores, Inc. v. Barrack, supra,* at 174. "While mere passive knowledge and consent to the acts of another, is not sufficient to render a party liable, . . . yet voluntary aid and assistance undoubtedly will." *Stansbury v. Fogle,* 37 Md. 369, 384 (1873). *See Nance v. Gall,* 187 Md. 656, 668, 51 A.2d 535 (1946); *Fertitta v. Herndon,* 175 Md. 560, 566-567, 3 A.2d 502 (1939); *Angelozzi v. Cossentino,* 160 Md. 678, 683, 155 A. 178 (1931); *McNamara v. Pabst,* 137 Md. 468, 474-475, 112 A. 812 (1921); *Mertens v. Mueller,* 119 Md. 525, 537, 87 A. 501 (1913); *Gittinger v. McRae,* 89 Md. 513, 516, 43 A. 823 (1899). In *Banks v. Montgomery Ward & Co.,* 212 Md. 31, 38, 128 A.2d 600 (1957) the Court spoke in terms of a "criminal proceeding instituted or abetted by the defendant. . . ." In *Brewer v. Mele,* 267 Md. 437, 298 A.2d 156 (1972) the Court, in deciding that the first element of

malicious prosecution had not been shown, said, at 443: "[The defendant] was not shown to have instituted, instigated or inspired in any fashion a criminal proceeding against the [plaintiff] within the contemplation of the law of torts."

In our opinion Palmer did not meet its burden of demonstrating clearly the absence of any genuine issue of fact concerning the institution of the criminal proceedings. On the state of the record here, even assuming that the material facts before the court were undisputed, we believe that they were susceptible of more than one permissible inference. Thus, there was a disputed issue of material fact, to be determined by the trier of fact on the weight of the evidence: whether Palmer instituted, instigated, abetted, aided, assisted or inspired the criminal proceeding within the contemplation of the law of malicious prosecution.[1] The Court of Appeals said in *Mertens v. Mueller,* 122 Md. 313, 321, 89 A. 613 (1914), *quoting Mertens v. Mueller,* 119 Md. at 537: "[I]f 'there was any evidence tending to show that the swearing out of the warrant was directed or authorized' by the defendant,' or that he voluntarily aided or assisted in the prosecution, a case was made out for submission to the jury.'"

The necessary elements of malicious prosecution must be in concert for Wood to prevail. There remains for consideration the absence of probable cause for the proceeding and malice. In *Exxon,* 281 Md. at 697, the Court of Appeals, quoting *Banks,* 212 Md. at 39, found the law quite clear as to the definition of probable cause: " 'Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty.'"[2]

---

1. It seems that the trial court in "finding as a matter of fact, that all [Palmer] did was to report to the police authorities what was an apparent crime and subsequently showed up in Court for purposes of prosecution," implicitly recognized a conflict and resolved it by weighing the evidence. If so, it was, of course, improper.

2. In Nance v. Gall, 187 Md. 656, 669, 50 A.2d 120 (1947) the Court of Appeals expressly adopted the definition of probable cause in Munns v. DeNemours, Fed. Cas. No. 9926, 3 Wash. D.C. 31, which added "of the

Equally clear, said the Court, is that "if the facts, and the inferences to be drawn therefrom, relied on to constitute probable cause are clear and undisputed, the question is one of law for the court; where the facts are contested, however, whether they are proved is a question for the jury. . . . Thus when contested facts generate a jury issue 'the jury, after being instructed as to what constitutes "probable cause," . . . should be left to determine its presence or absence.' " *Exxon* at 697-698, *quoting W. T. Grant Co. v. Guercio,* 249 Md. 181, 187, 238 A.2d 855 (1968).

The nature of the termination of the proceedings in favor of the accused has definitive bearing on the existence or absence of probable cause. An acquittal by a jury is not evidence of want of probable cause, since the acquittal "may be based on a mere lack of proof beyond a reasonable doubt, and throws no light on the sufficiency of the evidence on which the instigator acted at the time the proceedings were instituted. . . ." *Norvell v. Safeway Stores,* 212 Md. 14, 20, 128 A.2d 591 (1957). However, the discharge of an accused at the preliminary hearing of a criminal charge is evidence of lack of probable cause, since, "it is the function of [a magistrate] to pass upon the sufficiency of the case against the accused to justify prosecution." *Banks v. Montgomery Ward & Co.,* 212 Md. 31, 40, 128 A.2d 600 (1957), *quoting* Prosser, *Law of Torts* at 656 (2d ed. 1955).

The facts and inferences to be drawn therefrom, pertinent to the element of probable cause, are in this case not so clear and undisputed as to allow the existence of want of probable cause to be a question of law for the court. It is by no means plain from the record before us how and why the changes in the charges were from time to time made. It is undisputed that the proceedings terminated in favor of Wood, but the nature of the terminations is unknown. We think that it is a permissible inference from the record that Wood was discharged in proceedings comparable to a preliminary

offense of which he is charged." It modified the opinion in other respects, 187 Md. 674, but refused to modify it with respect to the element of probable cause. *Id.* at 677. Prosser, Law of Torts 841 (4th ed. 1971), speaks in terms of "guilty of the offense."

hearing, the judge passing on the sufficiency of the case to justify prosecution and finding it lacking. This inference supplies evidence of lack of probable cause and would defeat the motion for summary judgment. The short of it is that we conclude that the facts relied upon to constitute probable cause are in dispute, and the trier of fact must determine them on evidence adduced at trial. We point to what the Court said in *Exxon,* 281 Md. at 698-699:

> "Furthermore, under conflicting evidence 'the issues as to probable cause and malice, however great the preponderance of probability may [seem] to be on the side of [the] defendant, [are] issues of fact, not law, and under our theory and system of trials their submission to the jury [is] necessary.' *Veid v. Roberts,* 200 Ala. 576, 76 So. 934 (1917); see *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 173, 122 A.2d 457, 459-460 (1956) (weight and preponderance of evidence is for the trier of fact). If more support for this conclusion is desired, the reader is referred to our decision in *Durante v. Braun,* 263 Md. 685, 690-691, 284 A.2d 241, 244 (1971) where 'despite the compelling recitation of exculpatory facts tending to show the existence of probable cause for the act of the defendants,' we concluded that the trial court erred in ruling that the plaintiff had not produced sufficient evidence on the issue to go to the jury."

It follows ineluctably from our decision that the jury is permitted under the evidence here to find a lack of probable cause, that it may also, if it chooses, infer the existence of malice. Hence it was error to withdraw the question of malice from consideration of the jury. *Exxon,* 281 Md. at 699-700.

We hold that the trial court erred in granting Palmer's motion for summary judgment with respect to the first count (malicious prosecution) of Wood's amended declaration.

We now consider the summary disposition by the trial court in favor of Palmer on the second count (abuse of

process) in Wood's amended declaration. Malicious prosecution, malicious use of process, and abuse of process are three separate and distinct torts.

"An action for abuse of process differs from actions for malicious prosecution and malicious use of process in that abuse of process is concerned with the improper use of criminal or civil process in a manner not contemplated by law after it has been issued, without the necessity of showing lack of probable cause or termination of the proceeding in favor of the plaintiff, while actions for malicious prosecution and malicious use of process are concerned with maliciously causing criminal or civil process to issue for its ostensible purpose, but without probable cause." *Walker v. American Security Co.,* 237 Md. 80, 87, 205 A.2d 302 (1964).

Actions for malicious prosecution and malicious use of process are essentially synonymous, with most cases referring to malicious prosecution as arising out of a criminal proceeding and malicious use of process as arising out of a civil proceeding. Malicious use of process has the four necessary elements of malicious prosecution plus the additional element that the damages were inflicted on the plaintiff by seizure of his property or other special injury. *Exxon* at 693, n. 5.

"Abuse of process differs from malicious prosecution [and malicious use of process] in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish." Prosser, *Law of Torts* 856 (4th ed. 1971) (footnotes omitted).

The Court of Appeals defined it in *Bartlett v. Christhilf,* 69 Md. 219, 229, 14 A. 518 (1888) as the "malicious misuse or misapplication of [legal] process to accomplish some purpose not warranted or commanded by the writ. In brief, it is the

malicious perversion of a regularly issued process whereby a result not lawfully or properly attainable under it, is secured." The Court quotes 2 Addison, *Torts* § 868: "Whoever makes use of the process of the court for some private purpose of his own, not warranted by the exigency of the writ or the order of the court, is amenable to an action for damages for an abuse of the process of the court." *Id.* *Bartlett* speaks of the tort in terms of malice, but Professor Prosser explains:

> "It is often said that proof of 'malice' is required; but it seems well settled that, except on the issue of punitive damages, this does not mean spite or ill will, or anything other than the improper purpose itself for which the process is used, and that even a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created. Thus if the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution; if he prosecutes him with such grounds to extort payment of a debt, it is abuse of process." Prosser, *Law of Torts* 856-857 (4th ed. 1971) (footnotes omitted).

Thus, the purpose for which the process is used, once it is issued, is the only thing of importance. "Consequently in an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding terminated in his favor, or that the process was obtained without probable cause or in the course of a proceeding begun without probable cause." *Id.* at 856. The essential elements of abuse of process are (1) an ulterior motive, and (2) a wilful act in the use of the process not proper in the regular conduct of the proceeding.

> "Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required. . . . The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property

or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of any formal use of process itself, which constitutes the tort." *Id.* at 857.

Such extortion may be by, among other means, the arrest of the person or criminal prosecution. "The ulterior motive or purpose may be inferred from what is said or done about the process, but the improper act may not be inferred from the motive." *Id.* at 858. *See Krashes v. White,* 275 Md. 549, 555-556, 341 A.2d 798 (1975); *Wesko v. G.E.M., Inc.,* 272 Md. 192, 194-196, 321 A.2d 529 (1974); *Delisi v. Garnett,* 257 Md. 4, 7-8, 261 A.2d 784 (1970); *James v. Goldberg,* 256 Md. 520, 530, 261 A.2d 753 (1970).

We think that there was a disputed issue of material fact sufficient to go to the jury: whether Palmer had an ulterior purpose and committed a wilful act in the use of the process not proper in the regular conduct of the proceeding. We believe that the facts as in the record permitted a reasonable inference that Palmer reported the incident to the police to coerce payment of the repair bill. Although in Wood's recounting of the telephone conversation with Kirby upon the arrival of the police, there was indication that the bill had then been paid, other facts presented showed that it had not. Kirby told Wood that he was going to be prosecuted. The charges and arrest were made on 27 April 1977, and the bill was paid on 3 May. The circumstances of the payment were proffered by Wood at the hearing on the motion for summary judgment. About the middle of April 1977 Kirby telephoned Wood's mother and told her that "there was a very serious situation concerning her son." Mrs. Wood went immediately to see Kirby. He told her that she would have to pay the sum of $952 "or else he would press charges." She asked what that meant, and Kirby declared that he would file charges against Wood and "it meant further that [her son] could go to jail." Wood was arrested on 27 April 1977, and on 3 May Mrs. Wood, who had borrowed the money after the conversation with Kirby, paid the bill in full.

Applying the principles governing the determination of a motion for summary judgment, we conclude that the trial court also erred in granting Palmer's motion as to the second count.

In the light of our decision, there is no need for us to reach Wood's challenge to the grant of the motion for summary judgment on procedural grounds or his appeal from the denial of his motion to strike the judgment.

Wood claims in his brief that the motion for summary judgment was made by Palmer in bad faith and solely for the purposes of delay. He asks this court to award him counsel fees and costs incurred by him thereby as authorized by § e of Md. Rule 610 (Summary Judgment). The section provides:

"Should it appear to the satisfaction of the court at any time that any motion or affidavit presented pursuant to this Rule is presented in bad faith or solely for the purpose of delay, the court shall forthwith order the offending party to pay to the other party the amount of the reasonable expenses which the filing of the motion or affidavit caused him to incur, including reasonable attorney's fees."

The Rules of Chapter 600 do not apply to proceedings dealt with in Chapter 1000, Appeals to the Court of Special Appeals. "Court" as used in Rule 610 e does not include the Court of Special Appeals. Rule 5 i. Any such award would have to be made by the trial court. The record before us does not show that request for expenses was made to the court below or that any action pursuant to the Rule was taken by that court. We have no authority to act under the Rule in the first instance, and there is nothing before us to review. The request is, of course, denied.

*Judgment reversed; costs to be paid*
*by appellee.*